[Civ. No. 55128. Second Dist., Div. Five. Sept. 25, 1980.]

CHRONOMETRICS, INC., et al., Cross-complainants and Appellants, v.
SYSGEN, INC., et al., Cross-defendants and Respondents.

## COUNSEL

Sackin & Middleton and Louis A. Sackin for Cross-complainants and Appellants.

McKenna & Fitting, Aaron M. Peck, I. Bruce Speiser and Edmond M. Connor for Cross-defendants and Respondents.

## OPINION

DOWDS, J.*—Defendants and cross-complainants in this civil action appeal from an order of court that their attorneys, the firm of Albertini & Gill (the law firm) be disqualified and prohibited from acting as attorneys of record for or otherwise serving or assisting as counsel to them in such action.[1] This order was issued after a hearing pursuant to an order to show cause which had been issued after notice to Eugene J. Albertini, a member of the law firm. The application for the order to show cause was supported by declarations of Harold Fatt, Morton Stein, and I. Bruce Speiser.

Fatt's declaration stated that he is a defendant in Marshall v. Schaefer (Super. Ct. L.A. Co., No. WEC 42370) and a cross-defendant in Chronometrics, Inc. v. Sysgen, Inc. (Super. Ct. L.A. Co., WEC 39344) (the litigation) and that at all times since the inception of the litigation the law firm has been counsel of record for parties adverse to him. He further stated that on or about July 14, 1978, he received a telephone call from Albertini who said he was calling in his capacity as counsel for Gourmet Wines, Ltd., an entity with which Fatt had been

---

*Assigned by the Chairperson of the Judicial Council.

[1]This order is appealable either as a final order upon a collateral matter under Code of Civil Procedure section 904.1, subdivision (a), or as an order granting an injunction under subdivision (f) of the same statute, (See Meehan v. Hopps (1955) 45 Cal.2d 213 [288 P.2d 267]; Kraus v. Davis (1970) 6 Cal.App.3d 484, 487 [85 Cal.Rptr. 846].)

associated, and as president of Chronometrics, Inc., an entity of which Fatt is a shareholder. Albertini stated his call had nothing to do with the litigation, but in fact during the conversation he said he was surprised Fatt was represented by the same counsel as those representing another party, Robert Schaefer, and invited Fatt to visit him in his office so that he could fully advise Fatt of facts relevant to his status in the litigation of which he believed Fatt had no knowledge. Albertini asked whether Fatt knew that, at the time he loaned money to Sysgen, Inc., a party to the litigation, Schaefer, its president, had $120,000 on deposit in a bank. Albertini indicated that there was a possibility that Fatt could be dismissed from the litigation.

Fatt's declaration further stated that Albertini telephoned him frequently in the ensuing days, encouraging him to come to Albertini's office to discuss facts affecting Fatt's position in the litigation and asking him for information concerning matters in issue in the litigation, including dates relevant to the corporate existence of Sysgen, Inc.

Fatt declared that the longest such telephone call, lasting over 45 minutes, occurred on July 23, 1978, and in such call Albertini asked whether or not Fatt was still a partner with Schaefer and if not when he withdrew, stating that these were "main issues in the litigation," discussed Fatt's supposed unawareness of the assets transferred to Sysgen, Inc., and the source of such assets, asked when Fatt became associated with Sysgen, Inc., and the date on which he terminated such association, characterized Schaefer as a "crook," mentioned his inability to convince the district attorney to prosecute Schaefer, described his persistence in seeking to recover monies supposedly paid by him to Schaefer, discussed Schaefer's supposed failure to pay his bills, despite the fact that he purportedly had received approximately $100,000 by virtue of a loan on his house, inquired whether Sysgen, Inc., was based in Warren, Ohio, and whether such presence was maintained for the purpose of "hiding funds" so as to avoid an attachment and discussed information germane to Schaefer's activities in the computer software industry. Albertini again urged Fatt to visit with him so that he could apprise Fatt of facts that might cause a change of attitude in the way Fatt viewed the litigation.

In a call on August 4, 1978, according to Fatt's declaration, Albertini "indicated that [Fatt's] counsel of record in the litigation...was not adequately representing [Fatt's] interests" and again invited his visit. By the third week in August 1978, according to Fatt, he had had eight

to ten such telephone conversations with Albertini, all placed by the latter except that in one instance Fatt returned a call made to him while he was in a meeting. In one of the last conversations, Albertini said that he did not have anything against Fatt but, because Schaefer was hiding his assets, Albertini would be required to satisfy any judgment and accordingly a meeting and eventual settlement would be in Fatt's interest.

Fatt further declared that these discussions made him "very nervous" about his status in the litigation and that he accordingly consulted an attorney other than his counsel of record in the litigation and that attorney communicated with Albertini. On January 16, 1979, Fatt's accountant (Stein) told him he had been called by Albertini who requested him to suggest to Fatt that he (Fatt) meet with Albertini. Fatt then decided, he said, for the first time to advise his counsel of record of these communications and did so on January 31, 1979. His declaration was dated February 2, 1979.

A declaration of Morton Stein averred that on January 14 or 15, 1979, Albertini called him at his residence and requested that he ask Fatt to consider meeting with Albertini concerning litigation involving them. Albertini stated, in response to an inquiry from Stein, that he would insist that Fatt have an attorney present at the meeting. Stein declared that he passed this information on to Fatt on or about January 16, 1979, and within the next few days received a telephone call and a letter from Albertini thanking him for his cooperation.

The third declaration presented in support of the application for an order to show cause was that of I. Bruce Speiser, who declared that he was a member of the State Bar of California, a member of the law firm of McKenna & Fitting, and counsel for Fatt, among others, in the litigation. Speiser declared that he did not learn of the communications from Albertini to Fatt concerning matters in controversy in said actions until January 26, 1979, and, that neither he nor any other attorney at McKenna & Fitting authorized or consented to such communications.

Declarations of Eugene J. Albertini, Barry I. Gold, and Robert Miles Runyan were filed on the return date of the order to show cause in opposition to the proposed disqualification of the law firm. Albertini denied that he ever discussed settlement with Fatt or any other defendant in the litigation, stated that he had known Fatt for many years and was the attorney for Runyan. He stated that in May or early June 1978, Runyan notified him that he had received intimations through

mutual friends of Fatt's and his that Fatt desired to settle the litigation. On June 20, 1978, Albertini declared, he telephoned Fatt, told him he was calling him only as the former attorney of Gourmet Wines and asked Fatt about documents Albertini had been asked to produce as a witness in a certain lawsuit (apparently different from the litigation described above). After this discussion was finished, Albertini averred, Fatt asked if it was all right to talk to Albertini about the current litigation between himself and Chronometrics. Albertini declared that he told Fatt he could only discuss settlement with Fatt in the presence of Fatt's attorney. There was some discussion about Fatt's obtaining attorneys other than McKenna & Fitting. On July 13, 1978, Albertini telephoned Fatt and asked him if he had obtained another attorney for the purpose of entering into settlement negotiations and Fatt said he intended to do so but had not yet found another lawyer and asked Albertini to call back in about a week. On July 20, 1978, Albertini called back and Fatt said he had not yet found another lawyer but would be contacting Albertini shortly. On August 8, 1978, Fatt called Albertini and told him he had retained Jonathan Klar who would be contacting Albertini shortly. On August 23, 1978, Albertini was contacted by Klar and they discussed settlement. Klar said he would look into the matter further and on September 14 and 15, 1978, Albertini and Klar held settlement discussions. Further negotiations by correspondence between Albertini and Klar did not result in a settlement and the negotiations were terminated in a telephone conversation on January 26, 1979. Albertini thereafter called Stein, to find out if he knew whether Fatt was sincere in his expressed desire to settle the litigation. Albertini denied that he ever communicated or discussed with Fatt facts and matters which are the subject of the litigation.

Gold's declaration stated that he was attorney for the plaintiff in an action entitled McHale v. Hilson, Los Angeles Superior Court No. WEC 32912, and that in connection with that lawsuit he had discussed with Albertini various transactions and documents involving Gourmet Wines and that Albertini had indicated that he would seek out some of the managers or officers of Gourmet Wines and endeavor to obtain information needed in respect of that lawsuit that he did not have.

Runyan's declaration stated that he was president and principal shareholder of a corporation of which Albertini was the attorney and Fatt was a former officer and employee. Runyan declared that about the middle of June 1978, an acquaintance who also knew Fatt told him

that Fatt wished to resolve his differences with Runyan and that he informed Albertini of this information a few days later.

On February 21, 1979, the trial court made an order that the law firm be disqualified and prohibited from acting as attorneys of record for or otherwise serving or assisting as counsel to Chronometrics, Inc., and Facit-Chronometrics, Inc., in the instant action and those two corporations have appealed.

Rule 7-103 of the California Rules of Professional Conduct provides in part that "[a] member of the State Bar shall not communicate directly or indirectly with a party whom he knows to be represented by counsel upon a subject of controversy, without the express consent of such counsel." It is undisputed in the opposing declarations that Albertini did communicate with Fatt without the consent of his attorney of record in the litigation, the only matter controverted being whether the communication was "upon a subject of controversy." The trial court resolved this conflict against appellants. ■ As stated in *Fuller v. Lindenbaum* (1938) 29 Cal.App.2d 227, 230 [84 P.2d 155] "in the consideration of an appeal from an order made upon affidavits involving the decision of a question of fact, an appellate court is bound by the same rule that controls it where oral testimony is presented for review. If there is any conflict in the affidavits, those in favor of the prevailing party must be taken as true, and the facts stated therein must be considered established."[2]

■ Accordingly, we must take as true the fact that Albertini communicated with Fatt respecting a subject of controversy, knowing that he was represented by counsel, without the consent of such counsel, and thus violated rule 7-103 of the Rules of Professional Conduct (West's Ann. Bus. & Prof. Code (1974 ed., 1980 cum. supp.), § 6076, at p. 96; Deering's Cal. Codes Ann. Rules (1980 ed.) at p. 293). Whether such a violation authorizes the trial court to disqualify him and his law firm from acting as counsel in an action which related to the subject in controversy appears not to have been directly decided in California. Respondents cite four federal cases which they contend support their position that a trial court has authority to disqualify an attorney and his law firm from continuing to represent a party "when the attorney compromises the integrity of the litigation through a

---

[2] A declaration under penalty of perjury is the legal equivalent of an affidavit under Code of Civil Procedure section 2015.5.

breach of legal ethics." They particularly rely on the language of *Ceramco, Inc.* v. *Lee Pharmaceuticals* (2d Cir. 1975) 510 F.2d 268, 270-271 [184 U.S. Pat.Q. 641]: "The district court was incorrect in its view that the various bar associations constitute the only proper forum for investigation of a claim of professional misconduct. On the contrary, the courts have not only the supervisory power but also the duty and responsibility to disqualify counsel for unethical conduct prejudicial to his adversaries."

The holding of the *Ceramco* case does not necessarily support respondents' position. The court's jurisdiction over the defendant Lee Pharmaceuticals and the propriety of venue in the Eastern District of New York were issues in the case. An attorney associated with the law firm representing the plaintiff telephoned defendant's order department and, without identifying himself, asked for and obtained the names of customers with whom defendant did business in that district. The court of appeals affirmed the denial by the district court of defendant's motion to disqualify the law firm representing plaintiff. While, it said, the lawyer's conduct was not to be commended, it was not the kind of conduct which prior decisions indicated should result in disqualification. It pointed out that the circumstances of such cases indicating "the need to enforce the lawyer's duty of absolute fidelity and to guard against the inadvertent use of confidential information" were not present in the case under consideration and no other compelling reason for disqualification appeared. (*Id.,* at p. 271.)

In *United States* v. *Clarkson* (4th Cir. 1977) 567 F.2d 270, a lawyer who prepared tax returns for taxpayers and was later accused of criminal tax fraud was disqualified from further representing taxpayers on tax matters because of at least a potential conflict of interest. The trial court's order finding him in contempt for violating the order was affirmed.

In *Gas-A-Tron of Arizona* v. *Union Oil Co. of California* (9th Cir. 1976) 534 F.2d 1322, the court of appeals recognized the principle that a lawyer may be disqualified from representing a party against a former client where he may be in a position to use confidential information against such client, but held that the principle had been wrongly applied in the case. Plaintiff's lawyers had been disqualified because an associate of the firm had formerly worked for a large law firm which had represented some of the defendants in certain matters. The order of disqualification was reversed because there was no showing that

the lawyer had actually obtained any confidential information or had worked on matters substantially related to the pending litigation.

The fourth federal case cited is *In re Gopman* (5th Cir. 1976) 531 F.2d 262. In that case, because of an obvious conflict of interest, a lawyer was disqualified from simultaneously representing in a grand jury investigation certain labor unions and certain officers thereof.

For California authority, respondents cite Code of Civil Procedure section 128, which states: "Every court shall have power:...To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto;..." They also refer us to *Comden* v. *Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971], which upheld a court order requiring a law firm representing the plaintiff to withdraw from the case on the ground that rule 2-111(A)(4) of the Rules of Professional Conduct, as it then existed, required withdrawal when the attorney "knows or should know that he...ought to be called as a witness on behalf of his client...." They particularly call our attention to footnote 4 found on page 916 of that case, where the Supreme Court said: "Application of rule 2-111 is not limited to breaches of standards of conduct for which discipline may be imposed, although the rule manifestly has application for that purpose. (See Bus. & Prof. Code, §§ 6076, 6077.) We have this year held that a trial court has authority to recuse a prosecutor on the basis that he may be biased against a defendant. (*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255....) We noted in that case: 'It has long been established in civil cases that the court has the power, on motion of a party, to disqualify an opposing attorney from participating in a trial when, for example, the attorney improperly seeks to proceed against a former client. [Citations.]' (*Id.*, at pp. 263-264; see also *Wutchumna Water Co.* v. *Bailey* (1932) 216 Cal. 564...; *Big Bear Mun. Water Dist.* v. *Superior Court* (1969) 269 Cal.App.2d 919....) Although there may be greater reason for disqualifying an attorney in a conflict of interest case, the court nevertheless has authority to disqualify in any instance when, as here, the court reasonably deems it necessary to '...control in furtherance of justice, the conduct of its ministerial officers....' (Code Civ. Proc., § 128; see *People* v. *Superior Court, supra*, 19 Cal.3d 255, 261, fn. 4.)"

In *Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942], the Supreme Court reversed an order requiring a party's at-

torney to pay an opposing party's attorney's fees occasioned by a mistrial which the trial court believed was caused by the misconduct of the attorney against whom the sanction was levied. The court recognized that all courts have supervisory or administrative powers to enable them to carry out their duties and that this power has been expressly recognized by the Legislature in Code of Civil Procedure section 128. (*Id.*, at pp. 634-636.) It pointed out that the traditional American practice has been for each party to bear his or her own attorney's fees and determined that the case it was considering did not fall within any of the recognized exceptions to the rule. (*Id.*, at pp. 634-637.) It then considered whether the court might award attorney's fees as a sanction under its supervisory power. It recognized that "[p]ursuant to this power, a court may take appropriate action to secure compliance with its orders, to punish contempt, and to control its proceedings." (*Id.*, at p. 637.) It declined, however, to permit the award of attorney's fees as a sanction for misconduct, stating: "It would be both unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute. If an attorney's conduct is disruptive of court processes or disrespectful of the court itself, there is ample power to punish the misconduct as contempt." (*Id.*, at pp. 637-638.) While the award of attorney's fees is a different situation from the instant case, the teaching of *Bauguess* as applied to this case is that the power of a trial court to control its proceedings is not unlimited and the availability of remedies other than sanctions unauthorized by statute should be considered.

*Pepper v. Superior Court* (1977) 76 Cal.App.3d 252 [142 Cal.Rptr. 759], is a case involving to some extent rule 7-103 of the Rules of Professional Conduct. An attorney brought on behalf of a client a class action against a country club of which both the attorney and the client were members, alleging that the club's imposition of transfer fees upon sales of memberships was illegal and contrary to the club's bylaws. The trial court disqualified the attorney on the basis of what it perceived to be a conflict of interest because of the attorney's membership in the defendant club. The attorney sought a writ of mandate from the Court of Appeal, which was denied because, the appellate court determined, he had unclean hands in that he had communicated directly with the board of directors of the club about the litigation without the consent of its counsel in violation of rule 7-103. The client then died, naming the attorney as his coexecutor. The trial court denied the attorney's motion to be substituted as party plaintiff for the deceased client and the attorney again sought a writ of mandate, this time successfully. The Court of

Appeal held that the unclean hands with which it had previously been concerned was in a different transaction, though a related one, from the instant matter, that its effect had been substantially attenuated by the death of the client and that the petition could not longer be denied on that basis. It concluded that the attorney's membership in the club did not in itself create a conflict of interest which would bar him from suing the club, decided that he was entitled to be substituted as party plaintiff as the coexecutor and ordered the trial court to vacate its order denying the substitution. While there are obviously some differences from the instant case, *Pepper* indicates that a violation of rule 7-103 should not necessarily bar an attorney for all time from participating in a lawsuit in connection with which the violation occurred.

The Supreme Court has stated in respect of rule 12, the predecessor of rule 7-103, that "The rule was designed to permit an attorney to function adequately in his proper role and to prevent the opposing attorney from impeding his performance in such role." (*Mitton* v. *State Bar* (1969) 71 Cal.2d 525, 534 [78 Cal.Rptr. 649, 455 P.2d 753]; *Abeles* v. *State Bar* (1973) 9 Cal.3d 603, 609 [108 Cal.Rptr. 359, 510 P.2d 719].)

■ We detect a common theme in the cases relating to disqualification of attorneys by trial courts. If the status or misconduct which is urged as a ground for disqualification will have a continuing effect on the judicial proceedings which are before the court, it is justified in refusing to permit the lawyer to participate in such proceedings. Thus a disqualification is proper for conflict of interest and, under a rule of professional conduct as it existed at the time of the opinion in *Comden* v. *Superior Court, supra*, when he ought to be a witness in a forthcoming trial. If, on the other hand, the court's purpose is to punish a transgression which has no substantial continuing effect on the judicial proceedings to occur in the future, neither the court's inherent power to control its proceedings nor Code of Civil Procedure section 128 can be stretched to support the disqualification.

In applying this principle to the instant case, we recognize that such information as Albertini may have learned from Fatt cannot be unlearned and that, whether Albertini is or is not disqualified as counsel, he can use this information as president of Chronometrics. Still it cannot be said that the court's order served no useful purpose in exercising proper control of the proceedings before the court. As counsel, Albertini would have the improperly obtained facts instantly available

in his mind in questioning witnesses, making and responding to objections and addressing the court and jury. Albertini as counsel would be in quite a different position from a substituted counsel who might acquire such information second hand by discussions with Albertini before or after court sessions or during recesses. █ It was not an abuse of the court's discretion to refuse to permit the wrongfully obtained information to be used by Albertini directly in the proceedings before the court. The extension of the disqualification beyond Albertini personally to his law firm has, however, no purpose but a punitive one.[3] As we have indicated, such purposes should be accomplished through established disciplinary proceedings.

The order is modified to provide for the disqualification of Eugene J. Albertini, personally, rather than the law firm of Albertini & Gill, in this action and, as modified, the order is affirmed. Each side shall bear its own costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

---

[3]We assume that, as was reported to us by counsel at oral argument, Fatt is no longer a party to the lawsuit and we take that fact into consideration. We express no opinion as to the propriety of the disqualification of an entire law firm in a case such as this if the opposing party wrongfully contacted remains in the action.