[Civ. No. 66265. Second Dist., Div. Two. June 14, 1983.]

VIVITAR CORPORATION et al., Plaintiffs and Appellants, v.
STEVE BROIDY, Defendant and Respondent.

**COUNSEL**

Arthur Livingston for Plaintiffs and Appellants.

Mitchell, Silberberg & Knupp, Richard M. Mosk, Patricia H. Benson and Michael Barclay for Defendant and Respondent.

**OPINION**

**COMPTON, Acting P. J.**—This appeal is taken from an order of the superior court disqualifying and prohibiting the law firm of Klinger and Leevan from representing plaintiffs in an action filed in the Superior Court of Los Angeles County. We reverse.

The issue presented is whether a conflict of interest requiring recusal of counsel exists when counsel for a trustee in bankruptcy is retained to represent some of the bankrupt's general creditors in an action brought in the state court

against one of the other general creditors. We hold that no cognizable conflict of interest exists which warrants disqualification of counsel in the state court action.

Northridge Camera and Sound, Inc., was a California corporation formed to carry on the business of selling at retail photographic equipment and accessories. Steven Broidy (Broidy) was the sole stockholder of Northridge Camera from its inception in 1977. In 1979, Broidy transferred all of the outstanding stock to his son. During the operation of the business, several camera companies provided photographic equipment to the corporation on credit. Plaintiffs are five of such suppliers.

In 1980, Northridge Camera was adjudged a bankrupt and Curtis B. Danning was appointed trustee by the United States Bankruptcy Court. The trustee was authorized to employ the law firm of Klinger and Leevan as his counsel in the bankruptcy proceedings. The trustee continues to be represented by that firm. Plaintiffs were among the general unsecured creditors filing claims in the bankruptcy action. Broidy also filed a claim as an unsecured creditor alleging that money was owing on loans made to the corporation. Neither the trustee nor the law firm's representation of the trustee are directly involved in the instant appeal.

In the action underlying this appeal, plaintiffs allege that they are entitled to collect the unpaid balances on their accounts with Northridge Camera, plus other damages, from Broidy, on the basis that Broidy defrauded them into extending credit to the corporation and that he is individually liable for the debts of the corporation as its alter ego. Plaintiffs retained the law firm of Klinger and Leevan to represent them.

In the trial court, after much discovery had been completed, Broidy moved to disqualify Klinger and Leevan as counsel on the basis that their dual representation of the trustee in bankruptcy and plaintiffs in this action created a conflict of interest. The motion was granted. After writ proceedings were unsuccessful, this appeal was taken. ■ An order disqualifying counsel from representing a party in litigation is directly appealable. (*Jacuzzi* v. *Jacuzzi Bros., Inc.* (1963) 218 Cal.App.2d 24 [32 Cal.Rptr. 188].)

The parties are in agreement that the applicable standard governing appellants' conduct is that provided in the California Rules of Professional Conduct, rule 5-102(B): "A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned."[1]

---

[1] The parties are also in agreement that rule 4-101 is not involved in this matter because it prohibits "employment adverse to a client or former client." There is no contention that Broidy ever had a direct lawyer-client relationship with the law firm of Klinger and Leevan.

No precise formula can be stated for the determination of whether an attorney is representing conflicting interests. The cases construing this and other rules of professional conduct largely turn on the individual facts of the relationships between the parties and the nature of the disputes involved. But some general themes are apparent. ■ The prohibition against representing conflicting interests exists to protect client confidences as well as to protect the client's confidence in the adequacy of his representation. (*Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6 [136 Cal.Rptr. 373].) Thus, the fact that a lawyer or law firm may be attempting in good faith to diligently represent clients with conflicting interests does not ameliorate the evil.

■ One of the earliest statements by the California Supreme Court regarding the standards for determining when an attorney represents conflicting interests is found in *Anderson* v. *Eaton* (1930) 211 Cal. 113, 116 [293 P. 788]:

"It is also an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. [Citation.] By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent."

■ The principle has also been stated as: "Conflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other." (*Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, at p. 713 [152 Cal.Rptr. 776].)

The task of the trial court was to apply these general principles to the facts of the case at bench. Neither our research nor that of the parties has revealed any cases which involve similar facts. The court below relied heavily on authority dealing with the question of whether counsel for an executor of an estate may properly represent some of the beneficiaries in disputes with other beneficiaries. (*Estate of Effron* (1981) 117 Cal.App.3d 915 [173 Cal.Rptr. 93].) Whether or not these situations are directly analogous to the bankruptcy setting need not concern us at this time because we have concluded that the authority relied upon is not persuasive.

*Estate of Effron, supra,* 117 Cal.App.3d 915, was a case involving a challenge by some heirs to several customary practices employed by institutional executors in probate proceedings, including paying statutory legal fees and hiring the lawyer who drafted the will as attorney for the executor. As a peripheral issue, the heirs contended that an executor owes a fiduciary duty to the heirs to discharge the attorney for the executor, with or without cause, upon demand by the heirs. In rejecting this contention, the court recited several general principles regarding the duties of an executor and his counsel. Among these general statements was the one relied upon by Broidy and the trial court: "Generally, the executor's attorney may not represent a beneficiary of an estate in a controversy with other beneficiaries except in those unusual cases where each of the parties expressly consents in writing and the attorney is not professionally hampered by the conflict problem." (*Estate of Effron, supra,* at p. 929.)

First, this statement is pure *dictum* since it was in no way pertinent to the resolution of any issues raised in the case. *Effron* clearly did not involve any dispute between beneficiaries; it involved a dispute between the beneficiaries as a group and the executor of the estate. The statement was apparently inserted as support for the conclusion that the executor's duties in retaining counsel and administering the estate were not subject to control by the beneficiaries. Thus, to the extent that this authority is analogous to the bankruptcy context at all, it would support plaintiffs' position that the trustee in bankruptcy (like the executor of an estate) does not necessarily represent the interest of the general creditors (whose interests are similar to those of beneficiaries of an estate).

Aside from the fact that the statement in *Effron* is not binding authority, its accuracy is also questionable when the sources on which it is based are closely examined. State Bar Rules of Professional Conduct, rules 5-101 and 5-102[2] are merely general prohibitions against the representation of adverse or conflicting interests. The major authority cited for the statement in *Effron* is an annotation entitled "Estate—Attorney Representing Heirs" (1956) 47 A.L.R.2d 1104. That annotation directly addresses the issue of the propriety and effect of an at-

---

[2]Rule 5-101 provides: "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

Rule 5-102 provides: "(A) A member of the State Bar shall not accept professional employment without first disclosing his relation, if any, with the adverse party, and his interest, if any, in the subject matter of the employment. A member of the State Bar who accepts employment under this rule shall first obtain the client's written consent to such employment. (B) A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned."

torney's representation of parties to controversies between beneficiaries of an estate during his employment as attorney for the executor.

After reciting the general rule proscribing the representation of conflicting interests, the author concludes:

"Whether an attorney for an executor or administrator may properly represent an heir or other beneficiary of the estate of the decedent in a controversy with other heirs or beneficiaries depends, therefore, ordinarily, upon whether there is any conflict between the interests of the estate and those of the heir or other beneficiary in respect of the matter involved, and the latter question depends, in turn, upon the circumstances of the particular case.

"Because of the comparatively small number of cases dealing with the question, very few generalizations may be made beyond the broad rule that where such conflict of interests exists, the attorney is disqualified to represent the heir or other beneficiary without the knowledge and consent of the persons affected, but not otherwise, and the results of the decisions must be stated largely in terms of holdings in particular instances.

"A proposition supported by several cases is that in a controversy between the heirs of the decedent, or other beneficiaries of his estate, in respect of a matter in which the executor or administrator has no interest and which does not affect his relation to the estate in his hands, the attorney for the executor or administrator violates no professional obligation by acting as attorney for one or more of such heirs or beneficiaries as against another or others." (47 A.L.R.2d 1105.)

Analysis of the cases cited in this article reveals that nearly all of them held that such dual representation was proper. The two cases which held that such dual representation was improper involved clear conflicts of interest since either the administrator or his attorney stood to benefit as a result of the distribution. (*Smith* v. *Jordan* (1904) 77 Conn. 469 [59 A. 507]; *Derlin* v. *Derlin* (1923) 142 Md. 352 [121 A. 27].)

The two cases mentioned from this state held that such dual representation was not inherently improper.

" 'Whether an attorney who is attorney for an administrator may act for one of the heirs as against other heirs in an adversary proceeding relating to the property of the estate is a question which would depend upon the circumstances of the particular case. We can conceive of situations where it might be improper,—for example, where the administrator is an heir at law,—but in the case here no disqualifying relation is shown between attorney and client.' "

(Annot. Estate—Attorney Representing Heirs (1956) 47 A.L.R.2d 1104, 1105, citing *Jones* v. *Lamont* (1897) 118 Cal. 499 [50 P. 766], and *Estate of Healy* (1902) 137 Cal. 474 [70 P. 455].)

Assuming for purposes of this analysis that the estate situation is analogous to the bankruptcy context, the same general principles should apply. Whether or not a conflict exists ought to be determined by the particular facts of the case rather than by the roles of the parties. Any blanket prohibition against such dual representation would be an unnecessarily harsh restriction of a client's right to counsel of his choice.

■ Broidy's argument both in the court below and on appeal is simply that the trustee in bankruptcy represents all of the creditors, and a conflict of interest is created if counsel for the trustee represents some of those creditors against others in actions which have their origins in dealings with the bankrupt.

The first premise of that argument is in error. ■ Although several authorities state in general terms that the trustee in bankruptcy represents the general creditors (see generally *Henry Ansbacher & Co.* v. *Klebanow* (2d Cir. 1966) 362 F.2d 569, 570; *Commercial Credit Corporation* v. *Skutt* (8th Cir. 1965) 341 F.2d 177, 181), such representation exists only to the extent that the interests of the trustee and those of the general creditors, in realizing the maximum from the estate for distribution to the creditors, coincide. If and when those interests diverge, the trustee clearly represents the bankrupt estate and not the general creditors. (See generally 11 U.S.C. § 323(a) of the Bankruptcy Reform Act of 1978 and 11 U.S.C. §§ 75(a)(8) and 96, of the Bankruptcy Act of 1898.)[3] The trustee's paramount duty is to conserve the assets of the estate and to advance the interests of the estate entrusted to him *including defeat of any invalid creditor's claim.* (*In re Traffic Safety Co., Inc.* (1982) 21 B.R. 669, 672.)

■ Since the duties of the trustee run directly to the bankrupt estate rather than to the creditors, it cannot be said in the context presented herein that counsel for the trustee represents the creditors. Thus, counsel's representation of some creditors against others in a separate action does not inherently present a conflict of interest.

The mere filing of a creditor's claim of untested validity cannot serve as a basis for disqualifying the trustee's attorney from prosecuting an action against the purported claimant, which action is outside of and unrelated to the bankruptcy proceedings.

---

[3]The bankruptcy action related to this proceeding was filed prior to the effective date of the Bankruptcy Reform Act of 1978 and therefore is governed by the former statute. Provisions of the reform act are relied upon only in so far as they provide general guidance and do not conflict with provisions of the former act.

We emphasize that Broidy makes no claim that because of Klinger and Leevan's representation of plaintiffs he is at a disadvantage in *this action* because of that firm's having obtained confidential information or for any other reason. Obviously plaintiffs are satisfied with their representation and there is no indication that Klinger and Leevan's total fidelity to the plaintiffs is any way impaired. The trial court's ruling of disqualification was based solely on the objective fact of the roles of the parties. That ruling was, as a matter of law, erroneous.

Broidy's complaint is really that the trustee and, through the trustee, Broidy himself will not be well represented in the bankruptcy proceedings. If the bankruptcy proceedings need "purifying" the trustee and the bankruptcy court have available all the necessary machinery. Clearly the bankruptcy court is the proper forum for resolution of the issue. Such purification will not result from disqualification in the present proceedings.

We note that Broidy did not raise the issue in the bankruptcy proceedings. Following the trial court's order of disqualification in the case at bench, Klinger and Leevan, however, *did* petition the bankruptcy court for instructions. That court ruled that Klinger and Leevan's representation of the trustee was in no way impaired or unsatisfactory.

It seems obvious to us that neither the creditors' fraud claim against Broidy which arose prior to the bankruptcy nor the creditors' claim of alter ego can be pursued by the trustee who represents only the bankrupt corporate entity. It follows that prosecution of those claims in a separate state action does not conflict with the interest of the trustee. This was precisely the findings of the bankruptcy court.

The order is reversed and the matter is remanded to the trial court with directions to enter a new and different order denying the motion to disqualify counsel.

Beach, J., and Gates, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 6, 1983.