[Civ. No. 31014. Fourth Dist., Div. One. Dec. 16, 1983.]

WILLIAM H. RALEY CO., INC., Petitioner, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
RUPERT GILBERT CARROLL, Real Party in Interest.

COUNSEL

Plourd, Blume, Scoville, Strickland & Breeze and John W. Breeze for Petitioner.

No appearance for Respondent.

Gray, Cary, Ames & Frye, Jay W. Jeffcoat and Robert M. Rauh for Real Party in Interest.

OPINION

**WIENER, J.**—On the petition of defendant William H. Raley Co., Inc., a California corporation (Raley), we issued an alternative writ to determine whether the trial court abused its discretion in denying Raley's motion to disqualify the law firm of Gray, Cary, Ames & Frye (Gray, Cary) as attorneys for plaintiff Rupert Gilbert Carroll. For the reasons set forth below, we issue the writ of mandate and order disqualification.

*Factual and Procedural Background*

The facts of the underlying dispute are easily outlined; the involvement of Gray, Cary is more complex.

In February 1973 Carroll leased his rock and gravel pit in Imperial County to Raley for 10 years. Several months before the lease expired Carroll filed suit against Raley for breaches of the lease agreement. In February 1983 Carroll changed his counsel to Gray, Cary, who filed a first amended complaint. Raley answered and unsuccessfully moved to disqualify Gray, Cary as Carroll's attorneys. The following facts were established at the disqualification hearing.

The La Jolla Bank & Trust Company (Bank) as trustee of the William H. Raley Testamentary Trust (Trust) owns 100 percent of the Raley common

stock. The Bank discharges its responsibilities as trustee through its trust investment committee (Committee) appointed by its board of directors. Where the Bank as trustee owns 100 percent of a closely held company such as Raley, the Committee is responsible for the company's operation and appoints its board of directors. Settlement authority in lawsuits involving wholly owned companies rests with either the Committee or the Bank's board of directors.

Gray, Cary is a law firm of about 100 lawyers based in San Diego, California. The firm maintains two San Diego offices (downtown and La Jolla) and a small Imperial County office in El Centro. Gray, Cary's San Diego offices represent the Bank in a variety of corporate matters. The firm does not represent the Bank as trustee or otherwise in any trust matters, and has never represented Raley or anyone associated with it. Karl ZoBell, a Gray, Cary senior partner in its La Jolla office, is a director of the Bank and a member of the Committee. ZoBell does not hold these positions as an attorney for either the Bank or the Committee. David A. Blume represents the Bank as trustee of the Trust and also represents Raley in Carroll's lawsuit. Gray, Cary's El Centro office represents Carroll.

Before agreeing to represent Carroll in February 1983 Gray, Cary completed its normal conflict check procedures, including a computer-assisted search of all parties and related persons. As a result of that search Gray, Cary/El Centro conferred with two Gray, Cary/San Diego partners responsible for representing the Bank in its corporate affairs. No conflict was perceived, although this conclusion apparently was reached without awareness of ZoBell's positions with the Bank and the Committee. Several weeks after Gray, Cary undertook Carroll's representation Blume told the Bank he believed a conflict existed by virtue of ZoBell's positions. The Bank relayed this assertion to ZoBell who immediately took steps to isolate himself from all matters involving Raley and the Trust at both Gray, Cary and the Bank. Those steps included a March 8, 1983 letter to a Bank officer and fellow Committee member in which ZoBell stated he had learned of the alleged conflict only six days earlier and "[n]o future communications concerning any aspect of the Raley estate (or trust) which has any direct or indirect connection with the dispute should come to my attention. Minutes, reports, and other written material concerning this matter should not come to me, and I should be asked to leave any meeting at which the matter arises. [¶] Because the Bank is represented, in this matter, by other counsel, you should communicate with the Bank's attorney in its capacity as executor of the Raley estate, or with the attorney representing the Raley corporation, if you have other concerns about this matter."

Blume raised the conflict issue out of concern over ZoBell's possible knowledge of confidential information about Raley pertinent to Carroll's

lawsuit. For example, from June through December 1982 Carroll had five or six contacts with James T. Slingsby, a Bank officer and chairman of the Committee. Carroll told Slingsby he thought Raley "was not living up to its original lease." Carroll also expressed interest in either purchasing Raley and/or its equipment or in leasing his land to other purchasers of Raley. In the latter event, Carroll wished to be advised of any sale of Raley's equipment. On March 2, 1983, counsel for Raley and Carroll met in Gray, Cary's El Centro office. Blume suggested that, in light of Carroll's earlier interest in buying Raley or its assets, perhaps a settlement could be reached in which Carroll would purchase Raley's assets at a discount in exchange for dismissal of Carroll's lawsuit. Carroll made a purchase offer which Raley rejected by selling its assets to another buyer. In a May 1983 declaration Slingsby stated the "Committee has made recommendations as sole shareholder concerning the sale of [Raley] and/or its assets."

The case remained at the pleading stage when Raley's disqualification motion was heard and denied in May 1983. This writ proceeding followed. (*Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893, 896-897 [175 Cal.Rptr. 575]; *Cooke* v. *Superior Court* (1978) 83 Cal.App.3d 582, 586 [147 Cal.Rptr. 915].)

*Conflict of Interest*

Before we may reach the disqualification issue in this case (see *post*), we must first determine whether a conflict of interest exists between Gray, Cary's representation of Carroll and ZoBell's relationship with Raley and the Trust through his positions with the Bank and the Committee. We pursue this inquiry without regard to the steps taken by ZoBell to isolate himself from Raley and Trust matters, as those steps are legally relevant only to the disqualification issue.

■ Rule 5-102(B) of the Rules of Professional Conduct of the State Bar of California[1] provides: "A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned." Professional responsibilities do not turn on whether a member of the State Bar acts as a lawyer. "One who is licensed to practice as an attorney in this state must conform to the professional standards in whatever capacity he may be acting in a particular matter. [Citation.]" (*Libarian* v. *State Bar* (1943) 21 Cal.2d 862, 865 [136 P.2d 321]; accord, *Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 542 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036].) Thus the scope of rule 5-102(B) includes conflicts of

---

[1]All rule references are to the Rules of Professional Conduct of the State Bar of California unless otherwise indicated.

interest arising other than in the course of legal representation.[2] "[A] conflict of interest [under rule 5-102(B)] may arise from an attorney's relationship with a nonclient. Such a conflict of interest may arise [1] where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity. It may also arise [2] where the attorney has acquired confidential information in the course of such a relationship which will be, or may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client." (Cal. Compendium on Professional Responsibility, *supra,* State Bar Formal Opinion No. 1981-63, p. 3.)

Both of the situations described in the State Bar's opinion for a conflict of interest under rule 5-102(B) exist in this case. ZoBell, acting for the Bank as trustee, has fiduciary duties to the Trust beneficiaries to manage Raley with reasonable skill, prudence and diligence. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, §§ 57, 59, pp. 5419-5421.) Indeed, ZoBell's positions with the Bank and the Committee require him to make every reasonable effort to maximize Raley assets. (*Id.,* at §§ 59, p. 5421, 62, subd. (1), p. 5423.) In the litigation below, ZoBell's duties on behalf of the Bank will require him to focus on the weaknesses of Carroll's lawsuit while, at the same time, ZoBell's law firm advocates the merits of Carroll's action. Gray, Cary's success on behalf of Carroll will result in a reduction of Trust assets (i.e., Raley assets) held by the Bank; and, of course, the converse also will be true. In effect, ZoBell's fiduciary relationship with Raley and the Trust through his positions with the Bank and the Committee, on the one hand, and his partnership status with Gray, Cary, on the other hand, places Gray, Cary on both sides of Carroll's lawsuit. The conflict of interest problems created by ZoBell's dual status are exacerbated by his

---

[2]As noted above, Gray, Cary does not represent the Bank as trustee of the Trust and has never represented Raley or anyone associated with it. In short, this is not a case of successive or simultaneous representation of clients with conflicting interests. (See generally, *Developments in the Law: Conflicts of Interest in the Legal Profession* (1981) 94 Harv.L.Rev. 1244, 1292-1334, 1352-1373.) Consequently, rule 4-101 is inapplicable to our analysis. Rule 5-101 also is inapplicable because there is no evidence Gray, Cary has acquired any pecuniary interest adverse to Carroll. Furthermore, Carroll obviously consents to Gray, Cary's representation in this case, thus rendering rule 5-102(A) inapplicable. Finally, we do not consider any appearance of impropriety (ABA Code of Prof. Responsibility, canon 9; see *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at p. 898, fn. 3) because such concerns in California are limited largely to cases involving attorneys who also are or have been public officials (ABA Code of Prof. Responsibility, DR 9-101; see, e.g., *People* v. *Rhodes* (1974) 12 Cal.3d 180, 185-187 [115 Cal.Rptr. 235, 524 P.2d 363]; *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at pp. 898-903; see also Cal. Compendium on Professional Responsibility, State Bar Formal Opinion No. 1981-63, pp. 4-7), and attorneys who also may be witnesses on behalf of their clients. (Rule 2-111(A)(4); see, e.g., *Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 912 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562]; *Lyle* v. *Superior Court* (1981) 122 Cal.App.3d 470, 479-483 [175 Cal.Rptr. 918].)

ongoing accessibility to confidential information about Raley which may be pertinent to Carroll's lawsuit. Furthermore, even if ZoBell has not already participated in decisions directly affecting the action, there is a continuing risk to Raley that he may do so. Under these circumstances, a conflict of interest clearly exists between Gray, Cary's representation of Carroll and ZoBell's relationship with Raley and the Trust.

*Disqualification*

Trial courts in civil cases have the power to order disqualification of counsel when necessary for the furtherance of justice. (Code Civ. Proc., § 128, subd. 5; *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 901, fn. 4 [142 Cal.Rptr. 509].) Exercise of that power requires a cautious balancing of competing interests. The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest. (See *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 915; *Lyle* v. *Superior Court, supra,* 122 Cal.App.3d at p. 481; rule 5-102(B).) In a case such as this the court also must consider in favor of disqualification the disruptive effect of repeated disqualification proceedings on the administrative process of the court (see *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at p. 902) and the financial burden of such proceedings on the moving party. Absent an abuse of discretion, a trial court's decision in a disqualification proceeding will not be disturbed on appeal. (*Id.,* at p. 903, fn. 7.)

Were ZoBell a sole practitioner occupying not only his positions with the Bank and the Committee but also Gray, Cary's position as Carroll's attorney, we have no doubt rule 5-102(B) would require his disqualification. (See *Klemm* v. *Superior Court, supra,* 75 Cal.App.3d at pp. 897-899; see also *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at pp. 901-902; *Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607 [168 Cal.Rptr. 196].) The difficult question is whether rule 5-102(B) requires the vicarious disqualification of Gray, Cary because of the conflict of interest between its representation of Carroll and ZoBell's relationship with Raley and the Trust.

As a general rule, "[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." (ABA Code of Prof. Responsibility, DR 5-

105(D); see *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at p. 898, fn. 3.) Automatic or mechanical application of the vicarious disqualification rule can be harsh and unfair to both a law firm and its client. (See *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at pp. 899-902; *Chronometrics, Inc.* v. *Sysgen, Inc., supra,* 110 Cal.App.3d at pp. 607-608.) The better approach is to examine the circumstances of each case in light of the competing interests noted above. (See *Vivitar Corp.* v. *Broidy* (1983) 143 Cal.App.3d 878, 881-882 [192 Cal.Rptr. 281].)

Here, Gray, Cary asserts it should not be vicariously disqualified because ZoBell has been sealed off from receiving any information about Raley and the Trust from the Bank and the Committee, and because ZoBell has further been isolated within Gray, Cary from the attorneys responsible for representing Carroll. We do not doubt ZoBell's good intentions in removing himself from Raley and Trust matters at the Bank and the Committee. However, ZoBell did not send his letter of immunization to every Bank director and Committee member. Furthermore, neither ZoBell nor the court can be assured that, in the course of casual conversations or meetings of Bank directors and Committee members, ZoBell will not obtain confidential information about Raley or the status of its defense in Carroll's lawsuit. ZoBell, as a current Bank director, may also find himself in the embarrassing position at board meetings of being required to discuss general policies affecting litigation, which policies may have a direct effect on the outcome of this case. The same difficulties inherent in relying on ZoBell's attempted isolation at the Bank recur in his efforts toward isolation within Gray, Cary. Again, without doubting the good faith of ZoBell and his colleagues, ZoBell's ongoing dual status creates a risk of misappropriation of confidential information about Raley pertinent to Carroll's lawsuit. To comply with the lower court's order and accommodate its opponent, Raley must face Gray, Cary's adversarial skills for Carroll while at the same time relying on ZoBell's assurances he will neither receive nor misuse confidential information which could help Carroll's cause. Raley should not be asked to confront Gray, Cary in both the courtroom and the board room. To verify Gray, Cary is not taking advantage of this conflict, Raley will have to take further periodic legal steps, thereby injecting separate issues and proceedings into the litigation. In large part the financial burden and administrative disruption caused by this legal wrangling unrelated to the merits of Carroll's lawsuit will be borne by Raley and the court.

Under the above circumstances, the lower court abused its discretion by refusing to apply the rule of vicarious disqualification against Gray, Cary.[3] There has been no showing Gray, Cary is uniquely suited to repre-

---

[3] We wish to emphasize the *sui generis* nature of this case. It is a square peg which does

sent Carroll, or that other counsel is unavailable. Furthermore, given the early stage of the litigation, Carroll's costs and delay to substitute new counsel should be minimal. Although Carroll has a right to counsel of his choice, and Gray, Cary has an interest in representing Carroll, these factors are heavily outweighed by the ongoing risk presented to the protection of confidential information about Raley (see rule 5-102(B); *Vivitar Corp.* v. *Broidy, supra,* 143 Cal.App.3d at pp. 881-882; ABA Code of Prof. Responsibility, DR 5-105(D); *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998-999) and by the administrative burden on the court and the financial burden on Raley which would result from repeated disqualification proceedings.

### Disposition

Let a peremptory writ of mandate issue directing the Superior Court of Imperial County to vacate its order denying Raley's motion to disqualify Gray, Cary as counsel for Carroll, and to enter a new order granting the motion.

Brown (Gerald), P. J., and Work, J., concurred.

---

not fit into the round holes of the rules most commonly applied in attorney disqualification cases. (See fn. 2, *ante.*) Nonetheless, we have placed this case within the confines of rule 5-102(B) and ABA Code of Prof. Responsibility, DR 5-105(D). Because of its unique facts, however, we believe the dire consequences suggested by Gray, Cary that lawyers will be unwilling to serve on corporate boards of directors will not occur. Additionally, we do not deal here with any issues arising from the more typical situation where an attorney acts as a corporate director and his firm wishes to represent the corporation.