Filed 1/7/14  Cordier v. Holder CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHYLA M. CORDIER, | B244150 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GP016054) |
| v. | |
| RICHARD L. HOLDER, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Mary Thornton House, Judge.  Affirmed.

David A. Cordier for Plaintiff and Appellant.

Mehta & Mann, Michele Mann and Jill P. McDonell for Defendant and Respondent.

_____

This is an appeal from an order disqualifying attorney David A. Cordier (Cordier) from representing his wife, appellant Shyla M. Cordier (Shyla), with respect to her petition to remove her brother, respondent Richard L. Holder (Richard),[1] as a successor cotrustee of their parents' trust.[2] Shyla contends there is insufficient evidence to support the probate court's finding that Cordier should be disqualified. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Shyla and Richard are siblings who were named as successor cotrustees of The Richard E. Holder and Mary A. Holder Trust, executed on February 11, 2009 (the trust). Richard E. Holder died on February 26, 2009. Mary A. Holder, who became the surviving trustee following her husband's death, resigned as trustee in August 2009, and died on July 19, 2010. Upon her resignation, Shyla and Richard became cotrustees of the trust.

On June 20, 2011, Shyla filed a verified petition in the probate court to remove her brother as cotrustee of the trust. The petition alleges that Richard has failed to perform his duties as cotrustee by failing to cooperate with Shyla, and by mismanaging the assets of the trust by failing to pay debts and real property taxes, failing to secure proper insurance on the trust's real properties, failing to make needed repairs to the real properties, and by engaging in "self-dealing" or alternatively disposing of trust assets as though they were his own. Richard filed a verified objection to the petition.

On November 4, 2011, Richard filed a motion to disqualify Cordier from representing Shyla in connection with her petition for removal. The motion was based on the grounds that Cordier had previously acted as an attorney for Richard regarding the formation of a corporation and had acted as an attorney for both cotrustees in the course of administering the trust. Richard submitted his own declaration, the declaration of his

---

[1] For the sake of convenience and not out of disrespect, we refer to the parties in the probate court proceeding by their first names.

[2] An order granting or denying a motion to disqualify counsel is appealable as an injunction order under Code of Civil Procedure section 904.1, subdivision (a)(6). (*Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 882.)

2

attorney, and documentary evidence. Shyla opposed the motion, and submitted her declaration, Cordier's declaration, their son Brian Cordier's (Brian) declaration, and documentary evidence. The parties' evidence sharply conflicts. Shyla also submitted evidentiary objections to Richard's evidence, which the probate court partially sustained. The probate court granted the motion to disqualify, finding "there is sufficient evidence to establish that David A. Cordier was Respondent's attorney and/or privy to confidential information relevant to this litigation." Shyla timely filed this appeal.

## DISCUSSION

### I. Standard of Review

"On review of an order granting or denying a disqualification motion, we defer to the trial court's decision, absent an abuse of discretion. [Citations.] The trial court's exercise of this discretion is limited by the applicable legal principles and is subject to reversal when there is no reasonable basis for the action. [Citations.]" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585.) "If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] . . . [W]here there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144 (*SpeeDee Oil*), citing *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d 572; *Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 119.)

"'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) We must view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and

3

resolving all conflicts in its favor.  (*Lenk v. Total-Western, Inc*. (2001) 89 Cal.App.4th 959, 968.)  Thus, in making our determination, we generally look only at the evidence and reasonable inferences supporting the successful party.  (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)[3]

## II.  Applicable Law

"A trial court's authority to disqualify an attorney derives from the power inherent in every court, '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'"  (*In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 585.)  "[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility."  (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1145.)  To this end, the State Bar Rules of Professional Conduct, rule 3-310 provides:  "(C) A member shall not, without the informed written consent of each client:  [¶]  (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or  [¶]  (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; . . .  [¶]  . . .  [¶]  (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

In cases of successive representation of clients with adverse interests, a former client who wishes to disqualify an attorney must show that the subjects of the successive representations are substantially related.  (*City and County of San Francisco v. Cobra Solutions, Inc*. (2006) 38 Cal.4th 839, 847.)  "To determine whether there is a substantial

---

[3]     Richard argues that Shyla's failure to include a reporter's transcript of the initial and continued hearings on his motion to disqualify is fatal to her appeal.  While such a transcript is generally helpful to our review and we ordinarily expect to see one, we cannot conclude that its absence here is fatal to the appeal, since there is no indication that any additional evidence was offered or that any evidentiary hearing was conducted.

relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation." (*Ibid*.)

## III. The Motion to Disqualify Was Properly Granted

### A. *Cordier's Prior Representation re Formation of Business*

One of the bases on which Richard asserts disqualification is that Cordier previously represented Richard in connection with the formation of a business entity. In his supporting declaration, Richard states that in 2001, he and his wife contacted Cordier "and asked for his legal assistance with regard to how we should form the business entity (ultimately DMH Construction, Inc.) that would be providing construction services to our company The Dennis Company." Richard states that he acted as the general business person while his wife possessed a contractor's license. He also states: "We paid David Cordier for his legal services. He advised us on how to set up the corporation and prepared the paperwork, as well as providing us advice on additional tax matters. We provided David Cordier with our confidential and private financial and tax information during that time." Richard attaches to his declaration a December 27, 2004, letter from the California State Franchise Tax Board "regarding our company DMH and the Tax Amnesty Application which it sent to Cordier, as our representative, and about which Cordier provided us legal advice."

In his opposing declaration, Cordier disputes most of these statements, asserting that he only rendered services in connection with the formation of DMH to Richard's wife, that he never prepared any tax returns for DMH or Richard, and that he never acquired any confidential information, whether financial or otherwise, relating to Richard, his wife, or any of their companies. We must nevertheless disregard this evidence in determining whether substantial evidence supports the probate court's finding.

Shyla argues that Cordier's prior representation of Richard with respect to the formation of Richard's business is not substantially related to her current petition for his

5

removal as cotrustee. She asserts that, even assuming Cordier obtained Richard's confidential financial information, her petition has nothing to do with Richard's finances, only the trust's finances and assets, and that the petition does not suggest that Richard would be personally liable for the trust's debts. But the petition alleges that Richard has mismanaged the trust's assets, has failed to pay the trust's debts, and has engaged in unspecified "self-dealing." In his declaration in opposition to the petition for removal, Richard states that he had to pay in full one of the trust's loans in the amount of $14,000, without indicating whether he used his own finances or was reimbursed by the trust, and that he had to provide a utility company with his personal social security number to keep utilities running on the trust's properties. We cannot say that as a matter of law Richard's personal finances, which were obtained by Cordier in his prior representation, are not material to the issues raised by the petition for removal, which concern Richard's ability to pay and resolve trust liabilities. When a substantial relationship exists, the courts presume the attorney possesses confidential information of the former client material to the present representation. (*Western Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 759–760.) "It is the possibility of the breach of confidence, not the fact of an actual breach that triggers disqualification." (*In re Marriage of Abernethy* (1992) 5 Cal.App.4th 1193, 1197, fn. 3.)

### B. Cordier's Involvement with the Trust

Richard asserts that Cordier's involvement with the trust and his simultaneous representation of both cotrustees provide additional grounds for Cordier's disqualification. We agree.

The evidence shows that Cordier drafted the trust executed in 2009, which supersedes a trust he also drafted in 1993.[4] The trust provides that the family residence in Glendale (the Glendale property) is to be distributed to Shyla and that, to the extent

---

[4] Although the probate court sustained the objection to Richard's statement in his declaration that Cordier drafted the trust, Shyla submitted an e-mail she wrote to Richard, in which she stated: "In fact, you acknowledge that [Cordier] prepared the trusts. . . . Moreover, if you read the trusts carefully, you will see that [Cordier] had effectively written himself out as a beneficiary of the trust."

necessary to equalize the division of trust assets, an equalizing payment must be made from one cotrustee to the other. Clearly, Cordier represented the settlors in drafting the trust. It is also true that an attorney who undertakes to fulfill the testamentary instructions of a client assumes a relationship not only with the client, but also with the client's beneficiaries. (*Heyer v. Flaig* (1969) 70 Cal.2d 223, 228.)

Cordier also drafted Mary A. Holder's resignation as surviving trustee, a durable power of attorney for health care naming Shyla as agent, and a durable power of attorney, naming both Richard and Shyla as agents. But his involvement did not stop there.

Richard presented evidence that while Mary A. Holder was still alive but no longer living at the Glendale property, he set up an appointment with a realtor to lease the residence. He informed Shyla of the meeting and Cordier also attended. The realtor calculated that the Glendale property could be rented for $2,000 a month. This amount would cover the cost of caring for Mary A. Holder. Cordier argued with the realtor and would not allow Shyla to sign the rental agreement. Richard declared that after that meeting, "I began to understand that although my sister and I were supposed to be Successor Co-Trustees, as well as cobeneficiaries, that we would not be able to rent the property without David Cordier's involvement and approval."

Richard also presented evidence that in June 2010, Cordier contacted him to say that Cordier, Shyla, and their son Brian had worked out an arrangement for the trust to sell the Glendale property to Shyla, who would in turn sell it to Brian. On June 14, 2010, Richard received two sales agreements prepared by Cordier. The first agreement provided for the sale of the Glendale property to Shyla as the "Buyer," and identified the "Seller" as Richard and Shyla, as cotrustees (the sales agreement). The second agreement provided for the sale of the Glendale property from Shyla to Brian. The sales agreement provided that the trust would sell the Glendale property to Shyla for $390,000 at 4 percent interest, with an upfront payment. The sales agreement represented that each of the parties "has received independent legal advice from attorneys of his choice with respect to the advisability of making the settlement and releases provided for herein, and with respect to the advisability of executing this Agreement, and prior to the execution of

7

this Agreement by each party, that the party's attorney reviewed this Agreement at length, made all desired changes." The sales agreement included an indemnification clause in favor of Shyla and Brian, but not Richard. The sales agreement also provided that copies of all notices served with respect to the agreement be sent to Cordier.

Richard declared that he had no negotiations regarding the sale of the Glendale property before receiving the sales agreement. According to Richard, Cordier did not suggest that Richard seek his own legal advice regarding the sales agreement. Instead, Cordier urged Richard to just sign the sales agreement to effectuate the intent of the trust and to provide for Mary A. Holder's care. Richard used a rudimentary online mortgage calculator to determine that the monthly mortgage payment would be less than the $2,000 recommended rental amount. Richard "refused to take Cordier's advice" to sign the sales agreement, and subsequently retained his own attorney.

"No precise formula can be stated for the determination of whether an attorney is representing conflicting interests. The cases construing this and other rules of professional conduct largely turn on the individual facts of the relationships between the parties and the nature of the disputes involved." (*Vivitar Corp. v. Broidy* (1983) 143 Cal.App.3d 878, 882.) Thus, the totality of the circumstances must be considered, and here Cordier took on multiple and overlapping roles as attorney with respect to the trust.

In sum, we conclude there was sufficient evidence for the probate court to find that Cordier represented Richard regarding his business and received confidential financial information from him; Cordier represented and advised the settlors in creating the trust; Cordier represented both cotrustees in preparing the sales agreement and urging Richard to just sign the agreement; and Cordier assisted his son Brian and his wife Shyla in a manner adverse to Richard, as the cobeneficiary of the trust.

Accordingly, the probate court did not abuse its discretion in granting Richard's motion to disqualify Cordier.

**DISPOSITION**

The probate court's order granting the motion to disqualify Cordier is affirmed.
Richard is entitled to recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
CHAVEZ