**Robert W. ALLEN, individually and dba National Academic Games Project, Plaintiff,**

v.

**ACADEMIC GAMES LEAGUES OF AMERICA, INC., et al., Defendants.**

No. CV 93–1563 WJR (CTx).

United States District Court, C.D. California.

Sept. 14, 1993.

severance pay). By contrast, the Plaintiff in *Buell* sought statutory, FELA personal injury remedies.

Donald G. Norris, Debra K. Butler, Burton & Norris, Pasadena, CA, for plaintiff.

Diana Tabacopoulos, Steven Katz, Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, CA, for defendants, Academic Games Leagues of America, Inc., R. Lawrence Liss, James Davis and Jean Skomra.

Charles H. Carpenter, Glendale, CA, for defendant Stuart E. White.

Lee M. Amidon, Liebman, Reiner, McNeil & Walsh, Los Angeles, CA, for defendant Neal Golden.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANTS' ATTORNEY

REA, District Judge.

This action came on for hearing June 14, 1993, before the Court, the Honorable William J. Rea, United States District Judge presiding, on Plaintiff Robert W. Allen's Motion to Disqualify Defendants' Attorney of Record, Steven A. Wright, and the law firm of Seyfarth, Shaw, Fairweather & Geraldson. After full consideration of the papers submitted by the parties, the oral argument of counsel, the file in this case, and the applicable authorities, the Court rules as follows:

The issue presented to the Court is whether defendants' attorney's involvement with the plaintiff's business constitutes a sufficient conflict of interest to warrant disqualification. The Court holds that it does.

### I. BACKGROUND

Plaintiff Robert W. Allen, d.b.a. National Academic Games Project (hereinafter "NAGP"), is engaged in the manufacture, marketing and promotion of educational games. Plaintiff brings the instant suit against Academic Games Leagues of America, Inc., a corporation comprised of former employees of NAGP, alleging copyright and trademark infringement.

Defendants' attorney, Steven A. Wright, performed various duties for NAGP before, during, and after his attendance at law school. Beginning in 1978, Wright was first involved with NAGP as a student competitor and later as a volunteer coach. In January 1992, Wright attended the NAGP Board of Advisor's meeting. At that meeting, Allen informed Wright of potential trademark and copyright infringements by defendants. On July 11, 1992, Wright was appointed to NAGP's Advisory Committee as the Illinois representative. In this capacity, Wright attended Advisory Board meetings in July 1992, and January 1993. Wright's expenses

incurred while attending Advisory Board meetings as well as a one-time honorarium were paid by NAGP. In addition, Wright served as Chairman of the Language Arts Committee for NAGP.

Wright passed the Illinois Bar on November 5, 1992. Neither Wright nor his present law firm, Seyfarth, Shaw, Fairweather & Geraldson, were ever paid for any services rendered to NAGP.

The instant action was filed on March 18, 1993. Wright resigned from the Advisory Board and Language Arts Committee on April 2, 1993. In the instant motion, plaintiff moves to disqualify defendants' attorney of record, Steven A. Wright, and the law firm of Seyfarth, Shaw, Fairweather & Geraldson.

## II. *DISCUSSION*

Plaintiff has set forth two separate grounds for disqualification. The first is Rule 3–310 of the Rules of Professional Conduct of the State Bar of California.[1] The second is based on an alleged breach of fiduciary duty by Wright.

### A. *Rule 3–310*

■ Rule 3–310, entitled Avoiding the Representation of Adverse Interests, sets forth the appropriate legal principles to be applied in cases of conflicts of interest.

■ Rule 3–310(E) prevents an attorney from representing a client with interests that are adverse to a former client from whom the attorney has obtained confidential information unless the attorney obtains the written consent of the former client. Furthermore, a substantial relationship between the former and current representation gives rise to a presumption that the attorney has obtained confidential information from the prior representation, and in such instances there is no need to establish that the attorney actually obtained confidential information. *See Western Continental Operating Co. v. Natural Gas Corp.,* 212 Cal.App.3d 752, 261 Cal.Rptr. 100 (1989).

There is, however, a requirement that there be an attorney-client relationship. The Court in *Civil Serv. Comm'n v. Superior Court* stated:

> Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is "represented" by the attorney in a manner giving rise to an attorney-client relationship.

163 Cal.App.3d 70, 76–77, 209 Cal.Rptr. 159 (1984). In the case at bar, plaintiff alleges that Wright gave plaintiff advice regarding the potential litigation with defendants and, in addition, that Wright attempted to negotiate a settlement between the two parties in July 1992. Advice of this nature from a licensed attorney would clearly establish a conflict of interest under Rule 3–310(E).

Wright's actions fail to establish an attorney-client relationship with plaintiff. Wright did not pass the Illinois Bar until November 1992, and therefore was not qualified to render legal advice in June of 1992. Because Wright was not qualified to act as an attorney, his relationship with plaintiff cannot be construed as that of attorney and client.

Furthermore, by June 1992, plaintiff had hired outside legal counsel for representation on the matter and was aware that Mr. Wright had not yet passed the bar and was not licensed to practice law. This suggests that at the time of Wright's alleged intervention, the plaintiff knew that there was no attorney-client relationship between himself and Wright. Inasmuch as Wright did not represent plaintiff as a "client," the relationship is not controlled by 3–310(E).

■ It can be argued that Rule 3–310(B) is the applicable rule in the instant action. It provides that "[a] member shall not accept or continue representation of a client without providing written disclosure to the client where: .... (2) The member knows or reasonably should know that: (a) the mem-

1. All rule references are to the Rules of Professional Conduct of the State Bar of California unless otherwise indicated.

ber previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter." Wright's extensive involvement constituted both a personal and professional relationship with plaintiff's business which triggers application of 3–310(B). However, Rule 3–310(B) is intended to protect the current client by requiring written disclosure to that client. Thus, while defendant could seek disqualification under this subsection, Rule 3–310(B) provides no basis for plaintiff to seek such disqualification.

Accordingly, neither subsection (B) nor (E) of Rule 3–310 provides a basis for disqualification.

### B. *Fiduciary Duty*

■ In *William H. Raley Co. v. Superior Court*, 149 Cal.App.3d 1042, 197 Cal.Rptr. 232 (1983), plaintiff's law firm was disqualified because one of the firm's partners was a director of the bank and a member of the bank's trust committee which managed a trust of the defendant's property. The court reasoned that the trustee had a fiduciary duty to the trust and that his firm's representation of a client with interests adverse to those of the defendant would constitute a breach of that duty. The court held:

> [A] conflict of interest [under 5–102(B)] may arise from an attorney's relationship with a nonclient. Such a conflict of interest may arise [1] where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity. It may also arise [2] where the attorney has acquired confidential information in the course of such a relationship which will be, or may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client.

*William H. Raley Co.*, 149 Cal.App.3d at 1046–47, 197 Cal.Rptr. 232 (citations omitted).

Wright held a position on the Advisory Board and was National Rules Chairperson for the Language Arts from July 1992 until April 2, 1993.[2] Wright was admitted to the Illinois State Bar on November 5, 1992. Despite the fact that NAGP was not a corporation, Wright's role is similar to that of corporate director and raises many of the same concerns. He attended all Advisory Board meetings and was paid by plaintiff for his expenses related to his appearances. On at least one occasion, he was paid an honorarium for his services on the Board and as chairman of the Language Arts Committee. Wright's role with NAGP placed him in a position of trust and confidence to the extent that he would act in the best interests of NAGP. Wright's position as an Advisor to NAGP raised the possibility that he was privy to confidential information. Between November 1992 and April 1993, Wright was both a licensed attorney and serving on the Board of Advisors. This created an expectation that Wright would act in the best interests of NAGP.

In many respects, this case presents a stronger basis for disqualification than *William H. Raley Co.* In *William H. Raley Co.*, the attorney in question took steps to isolate himself from confidential information when he learned of the litigation and was never in any way connected with the litigation of the case. Nevertheless, the court disqualified him and his firm on the basis that he was still a threat to act as a conduit of confidential information. *Id.* at 1048–50, 197 Cal. Rptr. 232.

In the instant case, Wright appears to be directly involved with the litigation on behalf of the defendants. Furthermore, he remained affiliated with the plaintiff as an advisor for more than a year after he learned of the threatened litigation. In addition, he took no steps to isolate himself from the litigation while he remained with the plaintiff corporation. Finally, Wright did not resign until after the case was filed and the final defendant was served. Therefore Wright's connection with plaintiff's business while a licensed attorney and his failure to avoid any possible conflict of interest provide a suffi-

---

**2.** "Strictly speaking, directors are agents and not trustees, for they have no title to the corporation property; but they are subject to the fiduciary obligations of trustees." 9 WITKIN, SUMMARY OF CALIFORNIA LAW *Corporations* § 99 (1991).

cient basis for disqualification under *William H. Raley Co.*

In *William H. Raley Co.*, the attorney remained on the Board of Directors during his firm's representation of defendant. Here, Wright resigned from his positions at NAGP in April 1993. Nevertheless, under *William H. Raley Co.*, the court reasoned that the continued employment in both roles of the attorney/bank officer only "exacerbated" the conflict of interest problem. *William H. Raley Co.*, 149 Cal.App.3d at 1047–48, 197 Cal.Rptr. 232. This suggests that because of the confidential information that the attorney/bank officer may have already received via the bank, there still would have been a conflict even if the attorney resigned from the bank. Accordingly, *William H. Raley Co.* cannot be distinguished on the basis that Wright does not have current interests in both sides of the litigation.

Defendants further argue that *William H. Raley Co.*, no longer applies because Rule 5–102, on which it is based, has been replaced by Rule 3–310 (amended August 13, 1992). Applying Rule 5–102 to the present case, Wright would have to obtain the written consent of both parties. However, application of Rule 3–310 (as discussed above) would merely require disclosure to the new client.

Nonetheless, Rule 1–100 states that the general intent of the Rules is "to protect the public and promote respect and confidence in the legal profession.... The prohibition of certain conduct in these rules is not exclusive." Rule 1–100's intent supports disqualification of Wright. Wright's actions would undermine the integrity of the legal profession if he is able to utilize a loophole in Rule 3–310 to avoid disqualification. Because Wright was a law student during a portion of his involvement with plaintiff, the current conflict of interest rules do not appear to apply. Nonetheless, based on *William H. Raley Co.* and the intent of the Rules as provided in Rule 1–100, this is the type of conflict that the Rules seek to avoid.

## C. Legal Standard

The court in *In re Lee G.*, 1 Cal.App. 4th 17, 1 Cal.Rptr.2d 375 (1991), review denied (Cal. Mar. 12, 1992), set forth a balancing test for the disqualification of attorneys based on a conflict of interest. The *Lee* court adopted the balancing test set forth in *William H. Raley Co.*, which provides as follows:

> [T]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest. [Citations.]

*In re Lee G.*, 1 Cal.App. 4th 17, 26, 1 Cal. Rptr.2d 375 (quoting *William H. Raley Co.*, 149 Cal.App.3d at 1048, 197 Cal.Rptr. 232).

Wright's firm has assumed the representation of defendants pro bono, on the grounds that defendants cannot afford to pay for legal representation. Wright's firm's willingness to take on this case suggests that the first two factors, party's choice of counsel and attorney's interest in representation, lean against disqualification. Further, defendants' inability to afford counsel suggests that they would be greatly burdened if forced to find replacement counsel. Therefore the first three factors of the *William H. Raley Co.* test do not support disqualification.

Despite the number of factors which weigh against disqualification, all of these factors must be evaluated against whether the adversarial system is compromised in the present case by the attorney's conflict of interest. Wright's extensive and lengthy involvement with NAGP, his failure to resign in a timely fashion and his personal involvement with the representation of defendants clearly establish a significant conflict of interest. Wright's conflict of interest and the clear suggestion of impropriety, which his actions present, outweigh all of the other interests to be considered and justify disqualification. Accordingly, the Court concludes that plaintiff's motion to disqualify Wright is well taken.

When a lawyer is required to decline employment or is disqualified for a conflict of interest, disqualification is imputed to his entire firm. *Chambers v. Superior Court,* 121 Cal.App.3d 893, 898, 175 Cal.Rptr. 575 (1981). Thus, the entire firm of Seyfarth, Shaw, Fairweather & Geraldson should be disqualified from representing defendants.

### III. *CONCLUSION*

Based on the forgoing analysis, the Court finds that *William H. Raley Co.* and Rule 1–100 provide a sufficient basis for disqualification. The disqualification of Wright is extended to the entire firm of Seyfarth, Shaw, Fairweather & Geraldson under *Chambers v. Superior Court.* Accordingly, the Court hereby grants plaintiff's motion.

IT IS SO ORDERED.