TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|                           |   |                      |
|---------------------------|---|----------------------|
| OPINION                   | : | No. 14-301           |
|                           | : |                      |
| of                        | : | April 3, 2018        |
|                           | : |                      |
| XAVIER BECERRA            | : |                      |
| Attorney General          | : |                      |
|                           | : |                      |
| LAWRENCE M. DANIELS       | : |                      |
| Deputy Attorney General   | : |                      |
|                           | : |                      |

_____


THE HONORABLE MARK STONE, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:

1. May a city council member who is also an attorney advocate on behalf of a client's interests when those interests are adverse to the city?

2. May a city council member who is also an attorney participate in a governmental decision concerning a client's interests when those interests are adverse to the city?

CONCLUSIONS

1.      A city council member who is also an attorney may not advocate on behalf of a client's interests when those interests are adverse to the city.

2.      A city council member who is also a practicing attorney may not participate in a governmental decision concerning a client's interests when those interests are adverse to the city.

ANALYSIS

We are told of an elected city council member who, during his term on the council but in his separate capacity as a private attorney, represented clients in a dispute with the city over its ban of newspaper racks on city property. In the course of the representation, the council member wrote a letter to the city on behalf of his private clients, in which he argued that the city attorney's position supporting the ban was legally untenable. The dispute ultimately resulted in litigation, though the council member ceased his representation of the clients before a case was filed against the city.

This episode prompted the questions presented here: whether a city council member who is also an attorney may advocate on behalf of a client's interests, or participate in making official decisions affecting a client's interests, when the client's interests are adverse to those of the city. We conclude that a city council member may not advocate on behalf of a private client's interests under such circumstances, because to do so would violate his or her fiduciary duties to both the client and the city, and would undermine respect and confidence in the legal profession. Moreover, a council member's participation in an official decision involving a private client's adverse interests would in most cases run afoul of one or more statutory or common law conflict-of-interest rules.

We are also asked whether our conclusions would differ if the attorney received no compensation, if the representation were limited to pre-litigation, or if the matter did not involve litigation. These circumstances do not change our conclusions.

1.      **A city council member who is also an attorney may not advocate on behalf of a client's interests when those interests are adverse to the city.**

The Rules of Professional Conduct of the State Bar of California regulate the professional conduct of attorneys licensed to practice law in this state, and serve as the

2

basis for disciplinary action against attorneys.[1]  Having been adopted by the Board of Trustees of the State Bar of California, and approved by the California Supreme Court, these rules are binding.[2]

Rule 1-100 provides that the overarching purposes of the rules are "to protect the public and to promote respect and confidence in the legal profession."[3]  Rule 3-310 addresses an attorney's representation of adverse interests.[4]  Rule 3-310(C) forbids an attorney, without the clients' informed written consent, to accept representation of more than one client when the interests of the clients actually or potentially conflict.[5]  Moreover,

---

[1] Rules Prof. Conduct, rule 1-100(A), (E); *Chambers v. Kay* (2002) 29 Cal.4th 142, 156 (*Chambers*).

[2] Bus. & Prof. Code, §§ 6076, 6077; Rules Prof. Conduct, rule 1-100(A); Rules of State Bar, rule 1.1; *Chambers*, *supra*, 29 Cal.4th at p. 156.

Proposed new and amended Rules of Professional Conduct were submitted by the Board of Trustees of the State Bar of California to the Supreme Court of California on March 30, 2017.  See http://www.calbar.ca.gov/Attorneys/Conduct- Discipline/Ethics/Committees/Rules-Revision/Rules-Commission-2014/Proposed-Rules.

The proposed rules are not operative until approved by the Supreme Court, and there is no deadline for the Court's action.  It is beyond the scope of this opinion to determine whether adoption of the proposed rules would change the analysis of these questions.

[3] Rules Prof. Conduct, rule 1-100(A).

[4] Rules Prof. Conduct, rule 3-310; see *Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, 1110-1111 (*Walker*) ("An 'adverse' interest is one that is 'hostile, opposed, antagonistic . . . , detrimental, [or] unfavorable' to another's interests," quoting *Ames v. State Bar* (1973) 8 Cal.3d 910, 917).

[5] Rules Prof. Conduct, rule 3-310(C).  Rule 3-310(C) provides:

(C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

3

14-301

in cases of actual conflict a client's consent may be inoperative.[6]

As a threshold issue, we must determine whether rule 3-310(C) applies in the circumstances contemplated here. We believe that it does not, because the rule speaks to conflicting *attorney-client* relationships,[7] and a council member does not have an attorney-client relationship with the city by virtue of his or her office alone.[8]

Our inquiry does not end there, however. As Rule 1-100 admonishes, "The prohibition of certain conduct in these rules is not exclusive," and "[m]embers are also bound by applicable law," including the "opinions of California courts."[9] Further, the rules do not "create, augment, diminish, or eliminate any substantive legal duty of lawyers or the non-disciplinary consequences of violating such a duty."[10] Specifically, the rules do

---

[6] *In re A.C.* (2000) 80 Cal.App.4th 994, 1002; *Klemm v. Super. Ct.* (1977) 75 Cal.App.3d 893, 898; Discussion foll. Rules Prof. Conduct, rule 3-310.

[7] Although opinions differ among authorities, we believe that the prohibition of rule 3-310(C) applies solely to attorney-client relationships. In forming our view on the matter, we rely on judicial and other authorities interpreting the Rules of Professional Conduct. (See, e.g., 80 Ops.Cal.Atty.Gen. 127, 133-136 (1997); 80 Ops.Cal.Atty.Gen. 36, 37-38 (1997); 75 Ops.Cal.Atty.Gen. 223, 224-232 (1992).)

Rule 3-310(C)'s predecessor, former rule 5-102(B), stated that an attorney "shall not represent conflicting interests," which could include the interests of a non-client (*Raley v. Superior Court* (1983) 149 Cal.App.3d 1042, 1046-1047 (*Raley*); accord, *Allen v. Academic Games Leagues of America, Inc.* (C.D. Cal. 1993) 831 F.Supp. 785, 789 (*Allen*); State Bar Formal Opn. No. 1981-63, p. 3). But rule 3-310(C) now bars only the conflicting representation of more than one client in a matter, or of one client in one matter and another client in another matter. (See *Oaks Management Corp. v. Superior Court* (2006) 145 Cal.App.4th 453, 465, citing *In re Lee G.* (1991) 1 Cal.App.4th 17, 27; State Bar Formal Opn. No. 1993-132, pp. 3-5; see generally discussion foll. Rules Prof. Conduct, rule 3-310.)

[8] State Bar Formal Opn. No. 1981-63, *supra*, p. 2.

[9] Rules Prof. Conduct, rule 1-100(A); see, e.g., State Bar Formal Opn. No. 1998-152, pp. 3-4 (attorneys have professional responsibilities beyond those stated in Rules of Professional Conduct).

[10] Rules Prof. Conduct, rule 1-100(A); see *Mirabito v. Liccardo* (1992) 4 Cal.App.4th 41, 45 ("rules, together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his client").

4

not "supercede existing law relating to members in non-disciplinary contexts" such as judicial authority regarding attorney disqualification from representing a client.[11]

Where an attorney or his or her law firm simultaneously represents clients with adverse interests, "disqualification follows automatically regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other."[12]  This is because "[a]ttorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process."[13]

Based on the duty of loyalty, courts have held that an attorney is disqualified when a client's interest is adverse to the interest of non-clients with whom the attorney has a fiduciary relationship.[14]  In *Raley v. Superior Court*, a partner in a law firm suing a

---

[11] Discussion foll. Rules Prof. Conduct, rule 1-100.

[12] *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1147 (*SpeeDee*); *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284-285.  A few exceptions to automatic disqualification do exist.  (See, e.g., *State Farm Mut. Auto Ins. Co. v. Federal Ins. Co.* (1999) 72 Cal.App.4th 1422, 1432 [exception for immediate withdrawal from unforeseen concurrent adverse representation]; *Radcliffe v. Hernandez* (9th Cir. 2016) 818 F.3d 537, 543-547 [under California law, balancing test rather than automatic disqualification is appropriate for class actions].)

[13] *SpeeDee, supra*, 20 Cal.4th at p. 1146; see *id.* at p. 1147 (where client interests are "directly adverse in the same litigation," this "patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences"); *Flatt, supra*, 9 Cal.4th at p. 290 (simultaneous representation of adverse parties is a "spectacle" and has "practical effects on client morale and trust").

[14] *In re Mortgage & Realty Trust* (Bankr. C.D. Cal. 1996) 195 B.R. 740, 751 ("The rule prohibiting a lawyer from representing clients with conflicting interests is an instance of a more general rule:  a lawyer may not represent a client when the representation involves a conflict of interest with any other position that the attorney holds or represents.  Such a conflict may arise from the attorney's own interests, or from fiduciary duties of any sort that the attorney has undertaken"); see also ABA Model Rules Prof. Conduct, rule 1.7(a)(2) ("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which occurs if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a third person").

5

corporation was also the director of the bank that was trustee of 100 percent of the common stock of the corporation.[15] The Court of Appeal noted that, "Professional responsibilities do not turn on whether a member of the State Bar acts as a lawyer."[16] The court observed that a conflict of interest might result from a non-client relationship "'where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity.'"[17] The court further found that the attorney, "acting for the Bank as trustee, has fiduciary duties to the Trust beneficiaries to manage [the corporation] with reasonable skill, prudence and diligence."[18] The attorney's fiduciary relationship with the corporation, and his partnership with the law firm, therefore placed him on both sides of the litigation.[19] The court held that, despite the attorney's attempt to isolate himself from the case, the trial court abused its discretion in not disqualifying the attorney's firm.[20]

Later, in *Allen v. Academic Games Leagues of America*, the United States District Court for the Central District of California relied on *Raley* to conclude that one Mr. Wright, a California attorney, had a conflict of interest.[21] Wright represented the defendants in a copyright and trademark infringement case brought by the National Academic Games Project.[22] The court found that Wright had a fiduciary relationship with the business that was "similar to that of corporate director and raise[d] many of the same concerns."[23] The court noted that former rule 5-102, on which *Raley* relied, had been replaced by current

---

[15] *Raley*, *supra*, 149 Cal.App.3d at pp. 1044-1045 (relying on former rule 5-102(B) of the Rules of Professional Conduct).

[16] *Raley*, *supra*, 149 Cal.App.3d at p. 1046.

[17] *Raley*, *supra*, 149 Cal.App.3d at p. 1047, quoting State Bar Formal Opn. No. 1981-63, *supra*, at p. 1.

[18] *Raley*, *supra*, 149 Cal.App.3d at p. 1047.

[19] *Raley*, *supra*, 149 Cal.App.3d at p. 1047.

[20] *Raley*, *supra*, 149 Cal.App.3d at pp. 1048-1050, cited in *Kapelus v. State Bar* (1987) 44 Cal.3d 179, 195 ("in some contexts an attorney's fiduciary relationship with a nonclient may make it improper for the attorney to agree to represent a party who wishes to sue the nonclient").

[21] *Allen*, *supra*, 831 F.Supp. at pp. 786-789.

[22] *Allen*, *supra*, 831 F.Supp. at p. 786.

[23] *Allen*, *supra*, 831 F.Supp. at p. 788. Wright performed various duties for the business over time, including attending advisory board meetings with expenses paid, receiving an honorarium, and serving as chair of its language arts committee. (*Id.* at pp. 786-787.)

6

rule 3-310, which does not require disqualification of an attorney representing interests adverse to a non-client.[24]  But the court concluded that rule 1-100 compelled the same result, stating that "Wright's actions would undermine the integrity of the legal profession if he is able to utilize a loophole in Rule 3-310 to avoid disqualification."[25]  The court ruled that "Wright's conflict of interest and the clear suggestion of impropriety" required disqualification, and must be "imputed to his entire firm."[26]

To determine whether this ethical prohibition applies here, we must examine whether an attorney's fiduciary duty as a council member disqualifies him from representing a client with interests adverse to the city.[27]  The State Bar Committee on Professional Responsibility and Conduct has twice addressed this issue,[28] concluding that the adverse representation would be an ethical violation, both in contractual matters and in litigation.[29]

---

[24] *Allen*, *supra*, 831 F.Supp. at p. 789.

[25] *Allen*, *supra*, 831 F.Supp. at p. 789.

[26] *Allen*, *supra*, 831 F.Supp. at pp. 789-790; see also *Morrison Knudson Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 232-234 (*Raley* "remains good law").

[27] See *Hobbs, Wall & Co. v. Moran* (1930) 109 Cal.App. 316, 319 ("a councilman or other officer of a city sustains the same fiduciary relationship toward the citizens of his community that a trustee bears to his *cestui que trust*, and should therefore act with the utmost good faith"); *In re Vrdolyak* (Ill. 1990) 560 N.E.2d 840, 845 ("Respondent, as an alderman, owed his undivided fidelity and a fiduciary duty to the City"); Rest.3d, Law Governing Lawyers, § 135, com. f(i) & illus. 6 (an attorney has fiduciary duties as a city council member); Henry, *Lawyer-Legislator Conflicts of Interest* (1992) 17 J. Legal Prof. 261, 264 ("The legislator owes a duty of fidelity to constituents analogous to an attorney's duty of loyalty to clients").

[28] The Committee issues advisory ethics opinions to provide guidance to attorneys in understanding their duties and responsibilities under the Rules of Professional Conduct. Although the opinions are not binding, they have been cited in resolving ethical issues in published opinions of the California Supreme Court, of the State Bar Court Review Department, and of the Attorney General.  (Rules Prof. Conduct, rule 1-100(A); http://ethics.calbar.ca.gov/Committees/COPRAC.aspx; see, e.g., *Huskinson & Brown, LLP v. Wolf* (2004) 32 Cal.4th 453, 459; *In re Matter of Miller* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 423, 435-436; 62 Ops.Cal.Atty.Gen. 512, 515-516 (1979).)

[29] State Bar Formal Opn. No. 1981-63, *supra*; State Bar Formal Opn. No. 1977-46; see also State Bar Formal Opn. No. 2004-165, p. 4 (a lawyer may not "avoid those ethical

In the first of these opinions, issued 40 years ago, the Professional Responsibility and Conduct Committee concluded that an attorney may not represent a client in a contract negotiation with a city if the attorney is a council member of the same city.[30] The opinion reasoned that, otherwise, "the attorney may be tempted to use his influence of public office to gain advantages and concessions in contract terms for the benefit of his client."[31] Further, "[t]he city employees representing the city in a contract negotiation, who are subject to the council's jurisdiction, may be reluctant to oppose the attorney in his contract demands; or they may be tempted to slant their evaluations and analyses of the matter to favor the attorney."[32] The opinion pointed out that "the client is motivated to maximize his profits, while a prime concern of the city is to minimize its expense."[33] Also, "there is always the possibility that the attorney would seek to influence the vote of other council members not strictly on the merits but by reason of his client's interest."[34]

In view of these dangers, the opinion concluded that "it is highly possible that representation in such cases would be viewed with suspicion that the attorney was using his position and influence with the city for the purpose of extracting favorable or special treatment for his clients, in furtherance of their interests and his own." In such cases, "[e]ven the appearance of such impropriety could operate to weaken the public's confidence in the integrity and fidelity of its public officials."[35]

Four years later, the Committee extended its reasoning to litigation matters, concluding that when an attorney is a city council member, the attorney is barred from representing a plaintiff in a lawsuit against the city.[36] The opinion construed former rule

---

duties that can arise in the absence of an attorney-client relationship" where the "lawyer's relationship with a person or entity creates an expectation that the lawyer owes a duty of fidelity"); see also S.C. Bar Eth. Adv. Comm. Opn. No. 90-20 (1990) (city council member could not represent client whose interests were adverse to city).

[30] State Bar Formal Opn. No. 1977-46, *supra*, at p. 3.

[31] State Bar Formal Opn. No. 1977-46, *supra*, at p. 1; see Henry, *supra*, 17 J. Legal Prof. at p. 264 (when lawyer-legislator acts for client, public may believe that client has "purchased the legislator's protection").

[32] State Bar Formal Opn. No. 1977-46, *supra*, at p. 3.

[33] State Bar Formal Opn. No. 1977-46, *supra*, at p. 3.

[34] State Bar Formal Opn. No. 1977-46, *supra*, at p. 3.

[35] State Bar Formal Opn. No. 1977-46, *supra*, at p. 4.

[36] State Bar Formal Opn. No. 1981-63, *supra*, at pp. 4-7.

5-102(B) to forbid such representation because "[t]he public expects its elected representatives to represent them with undivided fidelity."[37]

The opinion spells out several examples of apparent and actual conflicts that could arise when a council member represents a party adverse to the city:

> Even if the council member-attorney abstains and if the council approves settlement, there would still appear to be an attorney[-]council member approving a settlement, and probably also a fee, in his or her own firm's case. Assuming the public appreciates that the attorney-council member has not voted, it will nonetheless appear that the other council members have approved a settlement to the benefit of the attorney-council member. Fellow council members might also be reluctant to oppose a settlement for this reason. City employees could be witnesses at trial and might appear to shade testimony to benefit the attorney-council member's case presentation. A case might require the attorney-council member's firm to criticize prior city council action as contributing to the tort. It could appear that the attorney-council member has influenced other members of the council or city employees and officials.[38]

The opinion reasons that "the legal profession's interest in maintaining public confidence in lawyers and the judicial system is sufficient to render representation of the type proposed here unethical."[39] Observing that "[i]t is the public official's visibility to the public which places his or her conduct, as an official and as a lawyer, before the public,"[40]

---

[37] State Bar Formal Opn. No. 1981-63, *supra*, at pp. 3-4, internal quotation marks omitted; see also *id.* at p. 3 ("When a lawyer is elected to the legislature, his duty as the holder of such office requires him to represent the public with undivided fidelity. His obligation as a lawyer continues. It is improper for him, as for any other lawyer, to represent conflicting interests") (internal quotation marks omitted).

[38] State Bar Formal Opn. No. 1981-63, *supra,* at p. 6.

[39] State Bar Formal Opn. No. 1981-63, *supra*, at p. 7; see Green, *Conflicts of Interest in Legal Representation: Should the Appearance of Impropriety Rule Be Eliminated in New Jersey—Or Revived Everywhere Else* (1997) 28 Seton Hall L. Rev. 315, 320 (the appearance-of-impropriety rule has "virtues" in "contexts where the public as a party has a direct stake" but "has nothing to commend it in contexts involving lawyers for private parties in which the public has no stake").

[40] State Bar Formal Opn. No. 1981-63, *supra*, at p. 7.

9

14-301

the opinion asserts a principle: "The greater the public scrutiny to which an attorney's conduct is subject, the greater the legal profession's interest in ensuring that the attorney's conduct appear to be proper."[41] As a corollary, "[a]n attorney must exercise the highest degree of care to avoid giving the public the impression that he or she has improperly used the influence of public office."[42] Applying this heightened standard of care, the opinion concludes that "the city council member's firm may not represent tort claimants in suits against the city."[43]

The public interest in promoting ethical conduct and public confidence in the legal system is founded on the rules of professional responsibility[44] and on case law.[45] We therefore conclude that an attorney-council member may not advocate for a client's interests that are adverse to the city—regardless of the type of matter involved in the representation.

Our view would be the same if the attorney-council member represented the client on a pro bono basis. The California Supreme Court has decided that, "An attorney's standard of professional conduct to a pro bono client should be no different from his or her responsibility to any other client."[46] An attorney's ethical duty of loyalty to the client therefore exists whether or not the attorney is compensated. Likewise, the policies of promoting respect and confidence in the legal profession and of protecting the public

---

[41] State Bar Formal Opn. No. 1981-63, *supra*, at p. 7.

[42] State Bar Formal Opn. No. 1981-63, *supra*, at p. 7.

[43] State Bar Formal Opn. No. 1981-63, *supra*, at p. 7; cf. *Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 298 (*Davis*) (goals of Government Code section 1090's conflict-of-interest prohibition on public officials include "avoiding the appearance of impropriety"); *Hamilton v. Town of Los Gatos* (1989) 213 Cal.App.3d 1050, 1058 (as to the Political Reform Act's conflict-of-interest prohibition on public officials, "[i]t is not just actual improprieties which the law seeks to forestall but also the appearance of possible improprieties," internal quotation marks omitted).

[44] E.g., Rules Prof. Conduct, rule 1-100(A); Bus. & Prof. Code, § 6001.1.

[45] See, e.g., *Walker*, *supra*, 4 Cal.App.5th at p. 1114; *Addam v. Superior Court* (2004) 116 Cal.App.4th 368, 371-372.

[46] *Segal v. State Bar* (1988) 44 Cal.3d 1077 (*Segal*), 1084; see L.A. County Bar Assoc. Formal Opn. No. 377 (1978) (a volunteer prosecutor is subject to the same ethical rules as a compensated prosecutor); see also Rules of State Bar, rule 3.329(A), (D) (attorney who exclusively represents clients without compensation is subject to all the same rules as other attorneys).

remain applicable when the attorney represents the client in a pro bono capacity.[47]

> **2.    A city council member who is also an attorney may not participate in a governmental decision concerning a client's interests when those interests are adverse to the city.**

We have concluded that ethical considerations preclude an attorney-council member from advocating for a client's interests that are adverse to those of the city he or she serves. We now address whether conflict-of-interest violations may also occur under the statutes, regulations, and common law governing public officials if the council member nonetheless undertakes the client representation.[48]   We examine three types of interests—financial, contractual, and fiduciary—under the Political Reform Act, Government Code section 1090, and the common law. [49]  As will be seen, there are areas of overlap between the state bar rules and the conflict-of-interest rules, such that a representation may be barred on more than one ground.  For the sake of completeness, we analyze each set of rules in full.

> **a.    Political Reform Act**

Under specified circumstances, the Political Reform Act of 1974 prohibits public officials from making, participating in, or attempting to influence governmental decisions if they have financial interests in those decisions.[50]   The Fair Political Practices Commission is charged with interpreting and administering the Political Reform Act, and has adopted regulations implementing it.[51]  A council member is a "public official" for

---

[47] See 62 Ops.Cal.Atty.Gen., *supra*, at pp. 515-516 (county supervisor precluded from representing, with or without compensation, defendant in criminal case in county) (citing State Bar Formal Opn. No. 1977-46, *supra*).

[48] See 99 Ops.Cal.Atty.Gen. 35, 47 (2016) ("although attorneys are subject to ethical guidelines, the existence of such guidelines does not excuse compliance with [Government Code] section 1090, which addresses the special issue of financial interest in government contracts").

[49] We limit our inquiry to state law.  Various local codes also seek to prevent council members from acting with conflicting interests.  (See, e.g., Garden Grove Mun. Code, § 2.02.060, ¶ (A); Lynwood Mun. Code, § 2-1.7, subd. (e); Oakland Mun. & Planning Code, § 2.25.040.)

[50] Gov. Code, § 87100 et seq.

[51] Gov. Code, §§ 83111, 83112, 83114; Cal. Code Regs., tit. 2, div. 6; 99 Ops.Cal.Atty.Gen. 18, 34, fn. 80 (2016).

11

purposes of the Act.[52]  If a council member has a disqualifying financial interest in a matter, then the council member must publicly announce the interest, recuse himself or herself from acting on the matter before the council, and leave the council's meeting room until after the council concludes the matter.[53]

Analyzing questions under the Political Reform Act requires consideration of all the elements of the statute, as well as its exceptions.  These include whether the public official is making a governmental decision; whether the official has an economic interest in the decision; whether the decision will have a material effect on the official's economic interest; and whether the material effect is reasonably foreseeable.[54]  It is a fact-specific inquiry, and each situation requires separate analysis.[55]  Generally speaking, however, when a city council member is also an attorney, he or she has a qualifying economic interest in a governmental decision involving his or her client if the client is a source of $500 or more in income to the council member in the 2-month period preceding the relevant council decision.[56]  Whenever all the elements of a violation are satisfied, the council member may not lawfully be involved in the council's decision.  There is no exemption for governmental contracts, litigation, pre-litigation, real-estate transactions, or permit applications. [57]

On the other hand, if the council member represents the client without charge, there would not be an economic interest as defined by the Political Reform Act, because the client is not a source of income of $500 or more to the attorney.[58]

---

[52] Gov. Code, § 82048, subd. (a); 89 Ops.Cal.Atty.Gen. 193, 197 (2006).

[53] Gov. Code, § 87105, subd. (a).

[54] See Cal. Code Regs., tit. 2, § 18700, subd. (d); California Attorney General's Office, Conflicts of Interest (2010) pp. 6-24.

[55] See 99 Ops.Cal.Atty.Gen., *supra*, at p. 34, fn. 80; 60 Ops.Cal.Atty.Gen. 206, 211, fn. 7 (1977); California Attorney General's Office, Conflicts of Interest, *supra*, at p. 7.

[56] Gov. Code, § 87103, subd. (c); Cal. Code Regs., tit. 2, § 18700.1, subd. (a)(1); *Witt v. Morrow* (1977) 70 Cal.App.3d 817, 821-823.

[57] We assume that the attorney is not representing himself or herself. Exceptions may apply where the attorney is the party.  (See Gov. Code, § 1091, subd. (b)(15); Cal. Code Regs., tit. 2, § 18704, subd. (d)(2).)

[58] Gov. Code, § 87103, subd. (c); see Martello Advice Letter, FPPC No. A-85-190 (Oct. 21, 1985) (where planning commissioner did not receive compensation for representing nonprofit group, Political Reform Act did not apply).

A council member could have a qualifying financial interest on some other basis,

## b.    Government Code section 1090

Government Code section 1090 provides that public officials "shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."[59]  The California Supreme Court has explained that "section 1090 is concerned with ferreting out any financial conflicts of interest, other than remote or minimal ones, that might impair public officials from discharging their fiduciary duties with undivided loyalty and allegiance to the public entities they are obligated to serve."[60]

A conflicted official may not avoid the application of section 1090 by abstaining from participating in the body's decision-making process on the contract.[61]  There are, however, various statutory exceptions to section 1090,[62]  as well as a limited common-law "rule of necessity" that allows a body to make a contract in limited circumstances despite a member's conflict.[63]

The question here is whether a city council member violates section 1090 by participating in the formation of a contract on behalf of the city where the member is also an attorney for a contracting party whose interests are adverse to the city.  To answer this question, we must determine whether the council member is "financially interested" in the contract within the meaning of section 1090.[64]  We believe that a council member does have a financial interest in a contract in which his or her client is interested.

For purposes of section 1090, courts construe the term "financially interested"

---

however, such as where the client is a business entity in which the council member has an investment worth at least $2,000.  (Gov. Code, § 87103, subd. (a); see also Gov. Code, § 87103, subds. (b), (d), (e).)

[59] Gov. Code, § 1090, subd. (a).  A city council member is a city officer under section 1090.  (*Thomson v. Call* (1985) 38 Cal.3d 633, 645; 96 Ops.Cal.Atty.Gen. 67, 70 (2013).)

[60] *Lexin v. Super. Ct.* (2010) 47 Cal.4th 1050, 1073 (*Lexin*).

[61] *Fraser-Yamor Agency, Inc. v. County of Del Norte* (1977) 68 Cal.App.3d 201, 211-212.

[62] Gov. Code, §§ 1091, 1091.5.

[63] *Lexin, supra,* 47 Cal.4th at p. 1097; 89 Ops.Cal.Atty.Gen. 217, 221 (2006).

[64] Gov. Code, § 1090, subd. (a).

broadly, not narrowly or technically.[65] The public's interest in having the undivided loyalty of a public official is just as strong where financial gain is more hoped for than certain.[66] "The phrase 'financially interested' broadly encompasses anything that would tie a public official's fortunes to the existence of a public contract."[67] "Put in ordinary, but nonetheless precise, terms, an official has a financial interest in a contract if he might profit from it."[68] The issue is whether the council member "stand[s] to be paid more or less based on whether the city signs [the] contracts or what terms are included."[69]

In an earlier opinion, we concluded that the law firm of an attorney-council member, by representing the city in a lawsuit, would have a financial interest under section 1090 in the contract for legal services, even if the firm received no fees.[70] First, we stated that "[s]ection 1090 would clearly prohibit the city council from executing the retainer agreement with the council member's law firm if the agreement provided for the payment of legal fees, regardless of the rate or amount charged."[71] Second, we determined that "the result would be the same" if the law firm represented the city without compensation, because "[t]he contract could also bring indirect economic gain to the law firm . . . ."[72] Here, the relevant contract would be one the city enters into with the council member's client, but all the same the attorney-council member would stand to profit from it, whether directly (from payment received for representing the client in connection with the contract),[73] or indirectly (such as from "prestige, publicity, and goodwill associated with

---

[65] *Torres v. City of Montebello* (2015) 234 Cal.App.4th 382, 402; *People v. Honig* (1996) 48 Cal.App.4th 289, 314-315 (*Honig*); 92 Ops.Cal.Atty.Gen. 67, 69 (2009).

[66] *Honig*, *supra*, 48 Cal.App.4th at p. 325.

[67] *Carson Redevelopment Agency v. Padilla* (2006) 140 Cal.App.4th 1323, 1335 (*Carson Redevelopment Agency*).

[68] *Honig*, *supra*, 48 Cal.App.4th at p. 333.

[69] 99 Ops.Cal.Atty.Gen., *supra*, at p. 47.

[70] 86 Ops.Cal.Atty.Gen. 138, 138-141 (2003), cited with approval in *Lexin*, *supra*, 47 Cal.4th at p. 1075.

[71] 86 Ops.Cal.Atty.Gen., *supra*, at p. 139, citing *Stigall v. City of Taft* (1962) 58 Cal.2d 565, 566-567, 571 (*Stigall*), *City Council v. McKinley* (1978) 80 Cal.App.3d 204, 207-208, 213-214, *People v. Sobel* (1974) 40 Cal.App.3d 1046, 1048-1053, and *Terry v. Bender* (1956) 143 Cal.App.2d 198, 201, 207-208 (*Terry*).

[72] 86 Ops.Cal.Atty.Gen., *supra*, at pp. 139-141.

[73] See California Attorney General's Office, Conflicts of Interest, *supra*, at p. 62 (an attorney's economic relationship with the client generally constitutes a financial interest).

14

any success" in the representation).[74]

There are two exceptions to section 1090 for an "attorney of the contracting party,"[75] neither of which applies here.[76] We believe that the Legislature did not intend these exceptions to authorize a council member to advocate for a client in a contract with the city.[77] We find that where a council member advocates for a client in a contract with the city, the attorney exceptions do not apply to lift the section-1090 prohibition.

On the other hand, we conclude that section 1090 would not be implicated based solely on litigation between the city and the council member's client.[78] A contract with a client for attorney representation is not a contract made in the council member's official capacity,[79] so section 1090 would not apply on that basis. And litigation is not a contract,

---

[74] 86 Ops.Cal.Atty.Gen., *supra*, at p. 141.

[75] Gov. Code, §§ 1091, subd. (b)(6), 1091.5, subd. (a)(10).

The Legislature has created two broad types of exceptions to mitigate section 1090: "remote interests" under section 1091 and "non-interests" under section 1091.5. (*Lexin*, *supra*, 47 Cal.4th at p. 1073.) "While a section 1091 remote interest requires disclosure and abstention, a section 1091.5 noninterest generally is no bar at all to participation in the making of a contract . . . ." (*Id.* at pp. 1074-1075.)

[76] These exceptions state that where an official who is "an attorney of the contracting party" receives no remuneration, consideration, or commission from the public contract, the official has either a noninterest or a remote interest. If the official owns less than 10 percent of the law firm, it is a noninterest; if 10 percent or more, it is a remote interest. (Gov. Code, §§ 1091, subd. (b)(6), 1091.5, subd. (a)(10).)

We believe that the phrase "an attorney of the contracting party" pertains to the representation of the client in other, unrelated matters, not in the contract with the city. This conclusion follows the interpretive rule of narrowly construing exceptions to section 1090 to avoid undermining its purpose of ensuring that public officials discharge their fiduciary duties with undivided allegiance.

[77] See 94 Ops.Cal.Atty.Gen., 22, 23, 25 (2011) (exceptions to section 1090 narrowly construed).

[78] This conclusion applies only as to section 1090, not to the other bodies of law that we address in this opinion.

[79] 85 Ops.Cal.Atty.Gen. 87, 87-88 (2002) (a city council member may contract with the city manager to provide employment services because the "contract would not be 'made' by the city council member in his official capacity but rather only in his private capacity"

15

so section 1090 would not apply on that basis, either.[80]  As for pre-litigation matters, section 1090 would not apply unless the parties were negotiating a settlement or some other contract.  Activity such as a council member's letter to the city on behalf of the client, disagreeing with the city's legal position, does not raise a section 1090 concern.  The same goes for representing a client in a permit application to a city, because a permit is not a contract.[81]

Lastly, the outcome would not vary merely because a representation was without compensation.  Pro bono representation may still produce economic gains, goodwill, or prestige for the council member's law practice, amounting to a disqualifying financial interest.[82]

### c.    Common law conflict of interest

"'A public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, zeal, and diligence and primarily for the benefit of the public.'"[83] "Public officers are obligated . . . to discharge their responsibilities with integrity and fidelity."[84]  Based on these tenets, the common law doctrine against conflicts of interest "'prohibits public officials from placing themselves in a position where their private, personal interests may conflict with their official duties.'"[85]  Where a common law conflict of interest exists, the official may not take part either in the discussion nor in a vote on the

---

since the city council does not participate in making the contract in question).

[80] 99 Ops.Cal.Atty.Gen., *supra*, at p. 46.  As a practical matter, however, it might be difficult for a council member litigating a case against the city to avoid all involvement in any settlement negotiations, which do implicate section 1090.  (See *Stigall, supra*, 58 Cal.2d at p. 571; 91 Ops.Cal.Atty.Gen. 1, 2 (2008).)

[81] *County Sanitation Dist. v. Super. Ct.* (1990) 218 Cal.App.3d 98, 108; *Scott-Free River Expeditions, Inc. v. County of El Dorado* (1988) 203 Cal.App.3d 896, 913; see also *US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 128-129 (a license is not a contract).

[82] 86 Ops.Cal.Atty.Gen., *supra*, at p. 141.

[83] 88 Ops.Cal.Atty.Gen. 32, 38-39 (2005), quoting *Noble v. City of Palo Alto* (1928) 89 Cal.App. 47, 51 (*Noble*).

[84] *Terry, supra*, 143 Cal.App.2d at p. 206.

[85] *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1171 (*Clark*), quoting 64 Ops.Cal.Atty.Gen. 795, 797 (1981).

relevant matter.[86]

Common law conflicts of interest extend not only to financial interests, but also to noneconomic interests if there is "some personal advantage or disadvantage at stake for the public officer."[87]  Common law conflicts are not limited to contracts, and may arise whenever an official's personal or pecuniary interests are at stake.[88]

As to financial conflicts of interest involving contracts, Government Code section 1090 codifies the common law rule against conflicts of interests.[89]  Consequently, a conflict of interest under section 1090 constitutes a conflict of interest under the common law.[90]

For non-contractual conflicts, whether pre-litigation or litigation, or involving non-litigation matters such as permit applications, the common law doctrine against conflicts of interest would prohibit a council member from participating in a decision affecting the client's interests when they are at odds with the city's interests.[91]  The council member's duty as an attorney to loyally and zealously represent the client's adverse interests would run up against the council member's duty as a public official to exercise his or her powers with disinterested skill, zeal, and diligence.  A council member's "representation of the client, at the expense of the best interests of the city, would insidiously undermine public

---

[86] 88 Ops.Cal.Atty.Gen., *supra*, at p. 39; 70 Ops.Cal.Atty.Gen. 45, 47 (1987).

[87] 88 Ops.Cal.Atty.Gen., *supra*, at p. 39, citing *Clark*, *supra*, 48 Cal.App.4th at p. 1172; see 92 Ops.Cal.Atty.Gen. 19, 23 (2009).

[88] See, e.g., *Clark*, *supra*, 48 Cal.App.4th at p. 1172; *Noble*, *supra*, 89 Cal.App. at pp. 51-55; 81 Ops.Cal.Atty.Gen. 274, 280-281 (1998).

[89] *Davis*, *supra*, 237 Cal.App.4th at p. 301; *Carson Redevelopment Agency*, *supra*, 140 Cal.App.4th at pp. 1329-1330.

[90] *Davis*, *supra*, 237 Cal.App.4th at p. 301 (finding a common law cause of action because it found a section-1090 cause of action).  However, if there is no conflict under section 1090, there may still be a common law conflict from a personal or noncontractual interest.  (92 Ops.Cal.Atty.Gen., *supra*, at pp. 23-24.)

[91] To the extent that a particular council action were "quasi-judicial" in nature, procedural due process concerns also would arise, as the affected council member-attorney could have an "unacceptable probability of actual bias" due to the client representation. (*Nasha L.L.C. v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482 ("quasi-judicial acts involve the determination and application of facts peculiar to an individual case," internal quotation marks omitted); see, e.g., *City of Fairfield v. Super. Ct.* (1975) 14 Cal.3d 768, 771, 773, fn. 1 (a city's council's vote on an application for a use permit is quasi-judicial).

confidence in the integrity of municipal government . . . ."[92]

These loyalties would also conflict if the council member represented the client pro bono, because an attorney always has a duty to zealously represent a client's interests regardless of whether he or she gets paid.[93] Likewise, an attorney has a professional duty to comply with state bar rules regardless of compensation.[94] Pro bono representation could also affect the reputation and resources of the council member's law practice.[95] Hence, under the common law doctrine against conflicts of interest, the council member must recuse himself or herself from such a decision.

Accordingly, we conclude that an attorney's ethical obligations preclude a city council member from advocating for a client's interests when those interests are adverse to the city. Further, we conclude that statutes prohibiting conflicts of interest for public officials, as well as common law conflict of interest principles for public officials, would prohibit a council member from participating in an official decision involving the client's adverse interests.

*****

---

[92] *City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38 Cal.4th at p. 854.

[93] See *Segal*, *supra*, 44 Cal.3d at p. 1084.

[94] See, e.g., *Libarian v. State Bar of California* (1944) 25 Cal.2d 314, 317.

[95] See 86 Ops.Cal.Atty.Gen., *supra*, at p. 141.

14-301